UNITED STATES of America, Plaintiff,

v.

Ronald Napoleon WOLFE,
Sr., Defendant.

No. CRIM. 97–50065.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 13, 1999.

Robert W. Haviland, U.S. Attorney's Office, Flint, MI, for U.S.

Donald E. Martin, Foster, Swift, Lansing, MI, Kenneth G. McIntyre, Sinas, Dramis, Lansing, MI, Kenneth J. McIntyre, Dickinson, Wright, Detroit, MI, for Ronald Napoleon Wolfe, Sr.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S AMENDED AND SUPPLEMENTAL MOTION TO SUPPRESS THE FRUITS OF A STATE SEARCH WARRANT AND DENYING DEFENDANT'S MOTION TO QUASH WARRANTS OF 12/23/96 AND 1/15/97, SUPPRESS EVIDENCE, DISMISS THE INDICTMENT, AND/OR DISMISS COUNTS I THROUGH IX, COUNT XII, AND COUNTS XVI THROUGH XVIII OF THE FIRST SUPERSEDING INDICTMENT**

GADOLA, District Judge.

Presently before the Court is defendant Ronald Napoleon Wolfe, Sr.'s Amended and Supplemental Motion to Suppress the Fruits of a State Search Warrant filed on September 30, 1998. The government responded to defendant's motion on October 23, 1998. On November 23, 1998, defendant untimely filed a reply brief entitled, "defendant's response to the government's October 23, 1998 response." On December 30, 1998, this Court issued an order granting the United States' motion to strike said reply brief pursuant to Local Rule 7.1 (E.D.Mich. Sept. 8, 1998).

Also before the Court is defendant's Motion to Quash Warrants of 12/23/96 and

1/15/97, Suppress Evidence, Dismiss the Indictment, and/or Dismiss Counts I through IX, Count XII, and Counts XVI through XVIII of the First Superseding Indictment. The government responded to defendant's motion to quash on October 26, 1998.

Previously, on September 1, 1998, this Court issued a memorandum opinion and order denying defendant's motion to suppress fruits of a state search warrant. Evidentiary hearings were conducted on July 30, July 31, and August 24, 1998. The above-entitled case arises out of the execution of a six-page state search warrant at defendant's residence on December 23, 1996. On that date, officers from the Livingston County Sheriff's Department, Michigan State Police and Brighton State Police went to defendant's premises to assist in the entry of the premises and/or execution of the warrant. After entering the house, defendant was arrested and his wife, Marie Wolfe, was given a copy of the search warrant to review. As a result of the ensuing search, the officers seized from a vault located in the basement of the house, and behind a secret door, the following items: a long "plant growing light," a water pump, electric timers, a humidity gauge, 8 plastic pots and 17 marijuana growing plants. Also inside the vault the officers found scores of firearms. After locating receipts for only twelve weapons, the officers seized 86 firearms. *See U.S. v. Wolfe*, 22 F.Supp.2d 627, 630–31 (E.D.Mich.1998)(Gadola, J.).

For the reasons set forth below, the Court will deny defendant's Amended and Supplemental Motion to Suppress the Fruits of a State Search Warrant and deny defendant's Motion to Quash Warrants of 12/23/96 and 1/15/97, Suppress Evidence, Dismiss the Indictment, and/or Dismiss Counts I through IX, Count XII, and Counts XVI through XVIII of the First Superseding Indictment.

## I. PROCEDURAL HISTORY

The instant case commenced December 3, 1997, when the grand jury returned an indictment charging defendant Wolfe with 21 federal firearms violations. Each count of the indictment was based on weapons seized by state officers during the execution of a state search warrant on December 21, 1996 at defendant's residence. Defendant moved to suppress from evidence all seized firearms, alleging that the warrant was invalidly issued and executed. As mentioned above, this Court conducted an evidentiary hearing on July 30, July 31, and August 24, 1998. On September 1, 1998, this Court issued a memorandum opinion and order discussing the various issues raised in defendant's motion to suppress. The Court held that (1) Detective Perry properly swore to the affidavit; (2) the affidavit sworn to by Detective Perry on December 23, 1996 is not invalid on the basis of defendant's claim that it contained false or misleading assertions of material fact; (3) there was probable cause to search defendant's entire premise based on the affidavit; (4) even if the affidavit does not establish probable cause, the good faith exception to the warrant requirement is applicable to validate the search in the case at bar; (5) whether the defendant consented to a search of the vault is moot; (6) seizure of the firearms is valid under the plain view exception to the warrant requirement; and (7) M.C.L. § 780.656 was not violated. *See U.S. v. Wolfe*, 22 F.Supp.2d 627 (E.D.Mich.1998)(Gadola, J.).

The original indictment was returned by a grand jury which had been unconstitutionally selected, pursuant to the Sixth Circuit's ruling in *U.S. v. Ovalle*, 136 F.3d 1092 (6th Cir.1998). The government therefore presented the case to a new grand jury, which subsequently returned a First Superseding Indictment on August 19, 1998. The First Superseding Indictment is identical to the original indictment, except that it adds a new Count 22. That count charges defendant with illegally manufacturing marijuana at his residence beginning on an unknown date and continuing until the date of the search, December 21, 1996, in violation of 21 U.S.C. § 841.

## II. DEFENDANT'S AMENDED AND SUPPLEMENTAL MOTION TO SUPPRESS THE FRUITS OF A STATE SEARCH WARRANT

### A. Previously resolved issues

In the amended and supplemental motion, defendant concedes that the following issues

have been adequately resolved for purposes of appellate review:

1. Whether Detective Perry swore to the affidavit submitted to Judge Hegarty on December 23, 1996;

2. Whether the affidavit presented to Judge Hegarty on December 23, 1996 contained false or misleading assertions of material facts;

3. Whether the affidavit presented to Judge Hegarty set forth sufficient facts, attributable to reliable sources, to support a finding of probable cause;

4. Whether Judge Hegarty critically evaluated the affidavit, or did he simply accede to the requests made in the affidavit and search warrant;

5. Whether there was a sufficient factual basis within the four corners of the affidavit to support a finding that Detective Perry relied in good faith on the search warrant;

6. Whether Detective Perry's entry into the gun vault complied with the requirements of M.C.L. § 780.656;

7. Whether Detective Perry's seizure of the firearms from the gun vault occurred in conformity with the plain view exception; and

8. Whether defendant consented to the search of the gun vault.[1]

*See* Defendant's Amended and Supplemental Motion, pp. 9–10.

### B. Issues about which defendant is uncertain as to their resolution

Defendant states that he is uncertain as to whether the following issues have been resolved:

1. Whether the search warrant described the property to be searched for and seized with sufficient particularity to satisfy the Fourth Amendment;

2. Whether the search warrant described the place to be searched with sufficient particularity to satisfy the Fourth Amendment;

3. Whether the execution of the search warrant was overly broad so as to require suppression of all evidence seized from defendant's home on December 23, 1996.

*See* Defendant's Amended and Supplemental Motion, p. 11. The government contends that this Court's previous opinion has resolved these issues, albeit by implication, against defendant, at least with respect to the seized firearms. The government concedes that the Court did not decide these issues with respect to the seized marijuana because Count 22 was added by the First Superseding Indictment, and was not addressed in defendant's prior motion to suppress.

These three issues all concern the validity of the underlying search warrant, as well as the manner of its execution. In the previous opinion, this Court explicitly stated that it found the warrant to be valid and enforceable, based upon probable cause as evidenced by the supporting affidavit of Detective Perry. *See Wolfe*, 22 F.Supp.2d at 636. In addition, the Court held that even if the warrant were defective, the search would still have been proper based upon the good faith exception to the exclusionary rule. *See id.* at 640 (citing *U.S. v. Leon*, 468 U.S. 897, 920–21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984)). Furthermore, the Court expressly acknowledged that the state search warrant did *not* authorize the police to search for and seize firearms. *Id.* at 641. Nevertheless, seizure of the firearms was held to be valid under the plain view exception to the warrant requirement. *See id.* (citing *Horton v. California*, 496 U.S. 128, 142, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

 In light of this Court's previous rulings on the subject, defendant will not be permitted to relitigate issues regarding the

---

**1.** Defendant maintains that although this Court has not specifically decided the issue of whether the search of the gun vault was consented to by defendant, the issue has been sufficiently preserved for appeal. *See* Defendant's Amended and Supplemental Motion, p. 10 n. 2; *see also U.S. v. Wolfe*, 22 F.Supp.2d 627, 641 (E.D.Mich.1998)(Gadola, J.). The Court agrees that the issue has been preserved. In the previous opinion of September 1, 1998, this Court held that whether defendant had consented to the search of the vault was *moot* because the government has never alleged, nor does it intend to allege, that the search of the vault was authorized by defendant's consent. *Id.*

validity of the search warrant and its execution. With respect to the applicability of these prior rulings to the marijuana seized during the search on December 23, 1996, defendant has advanced no reason why the plain view exception, as discussed and applied in the previous opinion, would not apply equally to both the seized firearms and to the marijuana. *See id.* The three requirements of the plain view exception have been satisfied, to wit: (1) the marijuana was in plain view; (2) the incriminating character of the marijuana was immediately apparent, and (3) the marijuana was viewed by an officer lawfully located in a place from which the marijuana could be seen and seized by an officer who had a lawful right of access to the marijuana itself. *See id.* Therefore, this Court finds that the prior rulings as set forth in the September 1, 1998 opinion will be extended to encompass the seizure of the marijuana and associated items.

### C. A new issue raised by defendant regarding M.C.L. § 780.655, and not previously addressed by this Court

■ Lastly, defendant raises an issue which has not been previously advanced. This issue may be phrased as follows:

whether M.C.L. § 780.655 was violated when, on February 3, 1997, the Livingston County Sheriff's Department transferred 26 firearms and/or firearm-related items to the custody of the Bureau of Alcohol, Tobacco and Firearms (ATF), which items had been seized previously by Detective Perry from defendant's home on December 23, 1996.

*See* Defendant's Amended and Supplemental Motion, pp. 11–14. The discussion below will focus on this newly raised issue, not previously addressed in this Court's prior rulings. As the United States points out, this issue could have been raised in defendant's previous motion to suppress. Therefore, according to the United States, it should be dismissed as untimely. Nevertheless, since the issue relates to conduct allegedly occurring after execution of the warrant on December

23, 1996, this Court will consider the issue on its merits hereinbelow.[2]

■ Pursuant to M.C.L. § 780.655, when an officer in the execution of a search warrant seizes any property, the officer is required to make a "complete and accurate tabulation" of the property and the things so seized. *Id.* According to the statute, the officer must then "give to the person from whom or from whose premises the property was taken a copy of the warrant and shall give to the person a copy of the tabulation upon completion. . . ." *Id.* In the alternative, the tabulation may be left "at the place from which the property or thing was taken." *Id.* Section 780.655 further provides that the officer shall "file the tabulation promptly with the court or magistrate." *Id.* "The property and things so seized shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence on any trial." *Id.*

According to defendant, Detective Perry did not provide defendant nor his wife with a complete and accurate tabulation of items seized. In addition, defendant alleges that the officer did not "safely keep" the property seized from the Wolfe residence. According to defendant, on February 3, 1997, Detective Perry turned over the firearms to ATF Agent Evans. Defendant argues that such conduct violates M.C.L. § 780.655, and that to permit introduction of such evidence against defendant would work a violation of due process of law under the Fourteenth Amendment.

The government responds that this argument is not timely raised. Even if considered timely, the United States contends that the argument clearly lacks merit. The government acknowledges that custody of the firearms was delivered to the ATF shortly after seizure. However, the prosecution maintains that defendant has made no showing that the evidence was not "safely kept" in accordance with the Michigan statute. Furthermore, even if the statute is interpreted to

---

2. It should be mentioned that defendant has made no allegation of a violation of M.C.L. § 780.655 with respect to the seized marijuana. As the government points out, the marijuana was never transferred to the ATF. According to the

government, the marijuana is currently in the custody of the state officers and will likely remain in their custody until introduced as evidence at trial.

mean that the seizing officer must keep the evidence in the custody of his own state agency, the government maintains that no part of the statute itself, nor any case law, indicates that the remedy for such a violation is suppression of the evidence. The government does not address defendant's allegation that officers failed to provide defendant with a tabulation of seized items.

In *People v. Lucas,* 188 Mich.App. 554, 470 N.W.2d 460, *appeal denied,* 439 Mich. 888, 478 N.W.2d 165 (1991), the Michigan Court of Appeals held that a technical violation of the "complete tabulation" requirement pursuant to M.C.L. § 780.655 does not require suppression of the seized evidence. *See id.* at 573. In *Lucas,* police officers committed a technical violation of M.C.L. § 780.655 when they neglected to make a complete tabulation of all items seized and failed to give copies of the warrant and a tabulation "forthwith" to the person from whom items were taken. *See id.* However, defendant in that case was provided with such documents at his arraignment. *See id.* The Michigan appellate court held that "this 'hypertechnical' violation of the statute does not require suppression of the evidence seized, particularly where defendant cannot articulate any harm or prejudice that resulted." *See id.* (citing *People v. Myers,* 163 Mich.App. 120, 122–123, 413 N.W.2d 749 (1987) and *People v. Tennon,* 70 Mich.App. 447, 245 N.W.2d 756 (1976)).

Michigan courts have also addressed the failure of officers to "safely keep" seized evidence. *See In re Forfeiture of $25,505,* 220 Mich.App. 572, 560 N.W.2d 341 (1996). In that case, the Michigan Court of Appeals held that failure to "safely keep" seized evidence in violation of M.C.L. § 780.655 creates a *rebuttable presumption* that unpreserved evidence would have been adverse to the government. *Id.* at 579–80, 560 N.W.2d 341. The court commented that "a ministerial defect did not void the effectiveness of the warrant or contaminate the evidentiary value of the property seized under the warrant." *Id.* at 578, 560 N.W.2d 341 (quoting *People v. Tennon,* 70 Mich.App. 447, 450, 245 N.W.2d 756 (1976)(internal quotation marks omitted)). Furthermore, "any defect in failing to give the defendant a copy of the search warrant at issue was 'hypertechnical in nature and did not prejudice defendant and, as a

result, the evidence seized pursuant to the search warrant should not be suppressed.' " *Id.* (quoting *People v. Myers,* 163 Mich.App. 120, 122, 413 N.W.2d 749 (1987)).

In view of the Michigan case law discussed above, defendant's request to suppress the firearms based upon an alleged technical violation of M.C.L. § 780.655 must be denied. Defendant has made no showing nor has he even asserted that any prejudice flowed to defendant from either the failure to immediately provide a tabulation of items or from the transfer of the weapons to the ATF. Defendant has failed to cite any authority for the proposition that the Michigan statute's "safely keep" requirement prohibits the transfer of items seized for the legitimate purposes of testing and evaluation.

The government makes the additional argument that the Michigan statute has no application to the instant case. As a case involving the prosecution for violations of federal laws in a federal court, the statute, according to the United States, should have no bearing on the suppression of evidence question. While it is true that "states are not free to impose on Federal courts requirements more strict than those of Federal laws or [the] Constitution," this Court need not reach the issue of whether the requirements of M.C.L. § 780.655 are more or less strict than those imposed by the federal Constitution. *See U.S. v. Combs,* 672 F.2d 574, 578 (6th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *see also U.S. v. Allen,* 954 F.2d 1160 (6th Cir.1992); *U.S. v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985). Even assuming that M.C.L. § 780.655 were applicable to the case at bar, and also assuming *arguendo* that the state police officers had somehow violated the statute, such a violation would not, under the Michigan case law cited above, warrant suppression of the firearms. Defendant simply has not made any showing of harm or prejudice which would warrant suppression. Even if the state agents had failed to "safely keep" the 26 firearms, defendant would be entitled, at most, to a rebuttable presumption and not suppression.

For the reasons set forth above, this Court will deny defendant's Amended and Supple-

mental Motion to Suppress the Fruits of a State Search Warrant.

### III. DEFENDANT'S MOTION TO QUASH WARRANTS OF 12/23/96 AND 1/15/97, SUPPRESS EVIDENCE, DISMISS THE INDICTMENT, AND/OR DISMISS COUNTS I THROUGH IX, COUNT XII, AND COUNTS XVI THROUGH XVIII OF THE FIRST SUPERSEDING INDICTMENT

Defendant has filed an additional motion seeking to quash two search warrants, suppress evidence, dismiss the indictment and/or dismiss the firearms counts of the indictment. This motion addresses issues arising not just from the search conducted on December 23, 1996, but also from subsequent searches conducted on January 16, 1997, pursuant to search warrants issued on January 15, 1997. According to defendant's motion, Mr. Wolfe's house was "again raided and some of the tax records had been returned to Wolfe's house." Brief in Support of Motion to Quash, p. 2. Also on January 16, 1997, the DEA raided Wolfe's mother's gun shop, "and seized 'tax records' and turned them over to Livingston County as evidence." *Id.*[3]

■ At the outset, the government argues that to the extent defendant seeks to suppress any items seized during the execution of the additional search warrants on January 16, 1997, defendant's motion should be denied as moot. Counsel for the government has advised defendant that the United States does not intend to offer in evidence any documents or items seized pursuant to the January 15, 1997 warrant. As a consequence, the Court will deny as moot defendant's motion, insofar as it seeks suppression of evidence seized on January 16, 1997.

In the instant motion, defendant raises the following three arguments, which will be discussed hereinbelow: (1) that disclosure of tax "return information" in the December 23, 1996 warrant and/or affidavit supporting the search warrant constitutes a violation of the Internal Revenue Code, and that the use of confidential information is unlawful; (2) that

under Federal Rule of Criminal Procedure 41, only a federal law enforcement officer or a U.S. Attorney is authorized to request a search warrant for federal tax records; (3) that defendant may not be found guilty of possession of an unregistered machine gun pursuant to 26 U.S.C. § 5861(d), because to do so would violate due process, as defendant is precluded by law from complying with the requirements of 26 U.S.C. § 5861(d).

### A. Whether disclosure of "return information" in the December 23, 1996 search warrant or in the supporting affidavit constituted a violation of the Internal Revenue Code, and thus requires suppression of evidence

■ Defendant argues that the December 23, 1996 warrant is unlawful because it relied upon the following language: "[i]nvestigation with agent Randy Evans of the [ATF] has determined that Ronald Napoleon Wolfe has a Federal Firearms Dealer License." Defendant also claims that Agent Evans revealed that Wolfe possessed a federally issued Class III firearm license. However, the supporting affidavit contains no such disclosure. Furthermore, the government denies that Agent Evans revealed the type of license involved. To the contrary, the United States maintains that witness Al Perry testified at the hearing held on July 31, 1998 that Evans refused to tell him what type of license Wolfe possessed.

Defendant claims that inclusion of language in the warrant revealing that Wolfe has a federal firearms dealer license is a violation of 26 U.S.C. § 6103. That section prohibits government employees from disclosing tax returns and tax return information. Defendant has cited no case law holding that an individual's status as a licensed firearms dealer is "return information" within the meaning of Section 6103. Furthermore, even in the event that a dealer's status were considered "return information," defendant has cited no case law holding that suppression of evidence is the appropriate remedy.

---

**3.** The government provides the date of January 15, 1997, one day prior, as the date for the execution of these subsequent search warrants.

*See* Government's Brief in Support of Response to Defendant's Motion to Quash, p. 2.

The government directs the Court's attention to *U.S. v. Hunter*, 863 F.Supp. 462 (E.D.Mich.1994)(Rosen, J.), wherein the district court considered whether the government's disclosure of defendant's "ATF Form 3 transfer papers" in a non-tax criminal proceeding violated 26 U.S.C. § 6103. Judge Rosen stated that "the Court does not see the need to resolve the issue of whether the government violated § 6103's confidentiality provisions in the investigation or prosecution of this case." *Id.* at 477. The court continued, "[t]his is because even if the Court were to hold that § 6103 was violated ... it is largely settled that suppression and dismissal are inappropriate remedies for such a violation." *Id.* (citing *U.S. v. Michaelian*, 803 F.2d 1042 (9th Cir.1986)).

Defendant attempts to distinguish *Hunter* on the ground that that opinion does not discuss 26 U.S.C. § 5848, a statute arguably applicable in the instant case. Section 5848 provides, in pertinent part, that

> [n]o information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of [the National Firearms Act] or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, *as evidence against that person* in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

26 U.S.C. § 5848(a)(emphasis added). However, as the government points out, Judge Rosen had considered Section 5848 in a previous opinion issued in the same case. *See U.S. v. Hunter*, 843 F.Supp. 235, 249–253 (E.D.Mich.1994). In that earlier decision, the court found that as long as the information was not used "as evidence," but merely for purposes of investigation, there was no violation of the statute. *See id.* at 252. As the court specifically noted:

> § 5848(a) bars the use of such records *as evidence*. The Court reads this provision to prohibit the introduction of protected records in a trial; it does not appear to proscribe the Government's utilization of the records so far in this case in order to

investigate and indict Defendants. Furthermore, and more pointedly, should the Government wish to use the records as evidence in trial, the Court believes that the "future crimes" and "furnishing false information" exceptions in § 5848 permit it to do so. A step-by-step review of each of the registrations and recordkeeping events set out in the indictments supports the Court's conclusion.

*Id.* (emphasis added).

■ In keeping with the decisions in *U.S. v. Hunter*, this Court finds that neither 26 U.S.C. § 6103 nor 26 U.S.C. § 5848(a) is an appropriate basis for suppression of the evidence in the case at bar. The government argues that it does not need to introduce the fact that defendant is a licensed firearms dealer to prove any element of the crimes charged. *See* United States' Brief in Response to Defendant's Motion to Quash, p. 5. Since the government does not intend to introduce such evidence, and has merely used information regarding Wolfe's status as a licensed firearms dealer for investigative purposes, Section 5848's prohibition is not applicable. In addition, again following Judge Rosen's lead in *Hunter*, this Court need not decide whether Section 6103 has been violated in view of the fact that suppression and dismissal are inappropriate remedies for such a violation. *See U.S. v. Hunter*, 863 F.Supp. 462, 477 (E.D.Mich.1994)(citing *U.S. v. Michaelian*, 803 F.2d 1042 (9th Cir.1986)).

**B. Whether, under Federal Rule of Criminal Procedure 41, only a federal law enforcement officer or a U.S. Attorney is authorized to request a search warrant for federal tax records**

■ Defendant further argues that since federal courts have exclusive jurisdiction over federal tax issues, a state court judge is not authorized to issue a search warrant to local law enforcement officers to seize federal tax records. In an attempt to support this position defendant cites Federal Rule of Criminal Procedure 41(a), providing that ("[u]pon request of a federal law enforcement officer or an attorney for the government, a search warrant...may be issued...by a fed-

eral magistrate judge or a state court. . . .").[4] In the case at bar, defendant argues that federal ATF agent Evans did not personally request issuance of the December 23, 1996 search warrant. Instead, the warrant was requested by Detective Perry, a state law enforcement officer. As a consequence, defendant requests suppression of the evidence seized.

The government responds that defendant's argument rests upon the erroneous assumption that the object of the search warrant was the seizure of federal tax records. The language of the warrant supports the prosecution's position that tax records were not the target of the officers' search. Rather, the warrant is aimed at uncovering evidence relating to various items allegedly stolen by defendant. The warrant authorizes a search for

> [d]ocuments or evidence indicative of the ownership or occupancy of the . . . premises; insurance records including contracts, claim forms and payment forms; bales of hay; golf carts; records relating to building materials for the structures on the premises; shingle samples; building material samples; photographs; records relating to the purchase, ownership or registration of firearms; records relating to the possession, ownership or registration of vehicles; records or evidence relating to horse ownership, sales or veterinary treatment.

*See* United States' Brief in Response to Defendant's Motion to Quash, p. 7. As is apparent from the above enumeration, the search warrant was not targeted at uncovering federal tax records.

■ The Court agrees with the government's position that defendant's argument relies on a mistaken assumption. Furthermore, and more importantly, defendant has cited no case holding that a state court may not legitimately authorize a search for federal tax records as evidence of facts pertinent to state law offenses. Defendant has utterly failed to provide any legal authority for his assertion that the "basic principles of federalism have been clearly violated in this case." Defendant's Brief in Support of Motion to Quash, p. 9. The only authority cited for this allegation is Federal Rule of Criminal Procedure 41. However, no part of that rule in any way buttresses defendant's position that state courts are prohibited from issuing warrants relating to federal tax records.

**C. Whether defendant may be found guilty of possession of an unregistered machine gun pursuant to 26 U.S.C. § 5861(d), when, according to defendant, he is precluded by law from complying with the requirements of 26 U.S.C. § 5861(d)**

■ Defendant's last argument concerns the interplay between two statutes: 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(*o*). Section 922(*o*) bans the private possession of any machine gun made after the effective date of the Firearm Owners' Protection Act (FOPA) on May 19, 1986.[5] Section 5861(d) of the National Firearms Act (NFA) prohibits a person from receiving or possessing "a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).[6] Defendant

---

4. Federal Rule of Criminal Procedure 41(a) provides in full:

(a) Authority to Issue Warrant. Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed.

5. 18 U.S.C. § 922(*o*) provides, in full, as follows:
(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—
(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

6. 26 U.S.C. § 5861 contains the following prohibitions:

It shall be unlawful for any person—
(a) to engage in business as a manufacturer or importer of, or dealer in, firearms without having paid the special (occupational) tax required by section 5801 for his business or

argues that "it is simply a violation of due process for the government to continue to arrest citizens for failing to file a tax return and pay their federal income taxes if Congress passed a law prohibiting the government from accepting tax returns and tax payments [with respect to banned machineguns]." Defendant's Brief in Support of Motion to Quash, p. 12.

At the outset, it should be noted that defendant's argument applies only to machineguns manufactured after May 19, 1986. According to the government, at least two of the machineguns involved in the instant case were manufactured during World War II, and therefore possession of these items would not be illegal pursuant to Section 922(o), assuming they were appropriately registered. Furthermore, defendant's argument would obviously not be applicable to the silencers, penguns, short-barreled rifle, or other items seized by the officers on December 23, 1996.

In response to defendant's argument, the government cites appellate court decisions holding that Section 922(o) did *not* repeal 26 U.S.C. § 5861(d). *See U.S. v. Ardoin*, 19 F.3d 177, 179–80 (5th Cir.1994); *see also U.S. v. Jones*, 976 F.2d 176 (4th Cir.1992), *cert. denied*, 508 U.S. 914, 113 S.Ct. 2351, 124 L.Ed.2d 260 (1993). Defendant cites *Ardoin* as well, but relies upon language of the *dissenting* opinion. Defendant's Brief in Support of Motion to Quash, p. 12. In addition, the Eighth Circuit has directly addressed the relationship between these two statutes in *U.S. v. Elliott*, 128 F.3d 671 (8th Cir.1997), wherein the court stated as follows:

[Defendant] Elliott contends his § 5861(d) conviction for failure to register the machinegun violates due process. Elliott argues § 5861(d) was implicitly repealed by the later-enacted § 922(o)(1), which prohibits possession of a machinegun. *Because Elliott can comply with both statutes by simply refusing to possess the machinegun*, we agree with the Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits that the statutes are reconcilable. *See Hunter v. United States*, 73 F.3d 260, 261–62 (9th Cir.1996); *United States v. Rivera*, 58 F.3d 600, 601–02 (11th Cir. 1995); *United States v. Ardoin*, 19 F.3d 177, 179–80 (5th Cir.1994); *United States v. Ross*, 9 F.3d 1182, 1193–94 (7th Cir. 1993), *vacated on other grounds*, 511 U.S. 1124, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994); *United States v. Jones*, 976 F.2d 176, 182–83 (4th Cir.1992); *but see United States v. Dalton*, 960 F.2d 121, 123–24 (10th Cir.1992). In sum, Elliott was fairly convicted under § 5861(d).

*Elliott*, 128 F.3d at 672 (emphasis added). This Court agrees with the reasoning articulated in the *Elliott* decision. The two statutes—Section 5861(d) and Section 922(o)(1)—are *not* irreconcilable. A person may easily comply with both by merely disposing of or refusing to purchase or possess the illicit machineguns. Defendant's argument attempts to circumvent Congress's intent, as expressed in Section 922(o), by creating the illusion of a contradiction where none exists.

Despite the Tenth Circuit's decision in *U.S. v. Dalton*, 960 F.2d 121 (10th Cir.1992), and a district court's ruling in *U.S. v. Gambill*, 912 F.Supp. 287 (S.D.Ohio 1996)(Spiegel,

having registered as required by section 5802; or

(b) to receive or possess a firearm transferred to him in violation of the provisions of this chapter; or

(c) to receive or possess a firearm made in violation of the provisions of this chapter; or

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter; or

(g) to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter; or

(h) to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed, or altered; or

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter; or

(j) to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by this chapter; or

(k) to receive or possess a firearm which has been imported or brought into the United States in violation of section 5844; or

(l) to make, or cause the making of, a false entry on any application, return, or record required by this chapter, knowing such entry to be false.

J.), the great weight of authority has affirmed the *Elliott* court's holding that these two statutes are indeed reconcilable. In *U.S. v. Djelaj*, 842 F.Supp. 278 (E.D.Mich.1994)(Rosen, J.), the court strongly criticized the *Dalton* decision, stating that

> [t]he Court finds the analysis in [*United States v. Jones*, 976 F.2d 176 (4th Cir. 1992)] and [*United States v. Ross*, 9 F.3d 1182 (7th Cir.1993)] clearly superior to that of *Dalton.* Just as the defendant in *Jones* could have complied with both the NFA [26 U.S.C. § 5861(d)] and § 922(*o*) by not dealing in newly-made machineguns, so, too, Defendants in this case could have complied with NFA § 5861(d) and Michigan's ban on Molotov cocktails by not possessing those destructive devices in the first place. *Dalton's* impossibility analysis is therefore flawed, and this Court declines to apply it. Furthermore, this Court believes that there is nothing fundamentally unfair with holding Defendants to answer for their breach of federal law regardless of what state law may say. If this were not the case, federal criminal statutes could be enforced only in states which agreed with and accepted them. This is a preposterous contention.
>
> Defendants' arguments to dismiss the indictment, then, when boiled down to their essence, collapse under simple common sense....

*Djelaj*, 842 F.Supp. at 281 (footnotes omitted).

This Court will join the *Djelaj* court in rejecting *Dalton.* Just as in *Djelaj*, defendant Wolfe's request in the instant case to dismiss certain counts in the indictment will be denied. Mr. Wolfe's due process rights have not been violated because of an alleged inability to comply with both of the above-discussed statutes. The two statutes are compatible, as shown above, despite defendant's impossibility argument.

For the reasons set forth above, this Court will deny defendant's Motion to Quash Warrants of 12/23/96 and 1/15/97, Suppress Evidence, Dismiss the Indictment, and/or Dismiss Counts I through IX, Count XII, and Counts XVI through XVIII of the First Superseding Indictment.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant's Amended and Supplemental Motion to Suppress the Fruits of a State Search Warrant is **DENIED;**

**IT IS FURTHER ORDERED** that defendant's Motion to Quash Warrants of 12/23/96 and 1/15/97, Suppress Evidence, Dismiss the Indictment, and/or Dismiss Counts I through IX, Count XII, and Counts XVI through XVIII of the First Superseding Indictment is **DENIED;** insofar as defendant's motion seeks suppression of evidence seized on January 16, 1997, it is **DENIED AS MOOT.**

**SO ORDERED.**