[Nos. G035328, G036443. Fourth Dist., Div. Three. Mar. 7, 2007.]

THE PEOPLE, Plaintiff and Appellant, v.
ANDY SUN, Defendant and Respondent.

## COUNSEL

Tony Rackauckas, District Attorney, and Brian N. Gurwitz, Deputy District Attorney, for Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, and Alison Merrilees, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Harry Zimmerman, under appointment by the Court of Appeal; Lightfoot, Vandevelde, Sadowsky, Crouchley, Rutherford & Levine, Paul S. Meyer and Blythe J. Leszkay for Defendant and Respondent.

OPINION

**SILLS, P. J.**—The District Attorney of Orange County appeals from two different orders of the Orange County Superior Court in the above-titled case. In one of these two consolidated cases, the appeal is from an order which dismissed nine counts in the indictment charging violations of Penal Code section 12020, subdivision (a)(2), possession of large-capacity magazines.[1] This dismissal was effected by the court's "merging" 10 counts of violating section 12020 into one count, in direct contradiction to the statutory authority of section 12001, subdivision (*l*).[2] The district attorney appeals from that portion of the order dismissing the nine counts of illegal possession of a large-capacity magazine, which is statutorily defined as "any ammunition feeding device with the capacity to accept more than 10 rounds . . . ." (See § 12020, subds. (a)(2) & (c)(25).) As the multiple counts were specifically authorized by statute, the district attorney contends the court's action was in excess of jurisdiction. We agree and therefore reverse the order.

In the second of the consolidated cases, the district attorney appeals from the trial court's granting a motion to suppress the firearms and ammunition—including the large-capacity magazines which were the object of the nine dismissed counts in the previous order—seized pursuant to a search warrant from Andy Sun's home and business. In granting the suppression motion, and its consequent dismissal of the indictment, the trial court rested on the application of a federal statute. That statute continues to "romp[] through this case like the proverbial 800-pound gorilla" (*Gates v. Municipal Court* (1992) 9 Cal.App.4th 45, 53 [11 Cal.Rptr.2d 439]), notwithstanding the prosecution's efforts to deflect attention from it. We affirm the order.

I

FACTS

Eric Maher, an agent from the state Department of Justice, submitted an affidavit to a magistrate and obtained a search warrant for Sun's home and business. The information in the affidavit identified Maher as having specialized training and experience in drug detection, investigation and seizure, as

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Originally, Sun faced 55 counts, but he raised a motion for the court to consolidate 10 counts of weapons possession—intended for sale—into one count (see § 12280, subd. (a)(1)), 10 counts of assault weapons possession into a second count (see § 12280, subd. (b)), 10 counts of large-capacity ammunition magazines into a third count (see § 12020, subds. (a)(2) & (c)(25)). The trial court granted the motion, resulting in a pleading charging five counts: one count of possessing assault weapons for sale, one count of possessing assault weapons, one count of possessing large-capacity magazines, and two counts of child endangerment.

well as search warrant affidavit development and writing. Maher related in the affidavit that he received information from another state agent, Cris Abad, that Rick Hoffpauer, a federal inspector from the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, had inspected the equipment in Sun's possession as permitted under Sun's federal firearms license. In that inspection, Hoffpauer reviewed Sun's inventory documents, which were required of him for his license, and noticed he had listed approximately 150 Omega SPS12 assault shotguns. He requested to view them, and Sun showed him 20 of them, although Hoffpauer observed there were other like containers. He then determined Sun was not licensed to possess or import assault weapons under California law; furthermore, Sun had not registered them under state law, and thus was in violation of section 12280. A neutral magistrate issued the warrant.

Agents of the California Department of Justice executed the search warrant on Sun's home and business. The state agents discovered an amazingly large inventory of assault weapons which Sun intended to sell,[3] as well as 23,000 "large-capacity magazine[s]." (§ 12020, subd. (a)(2).)[4] Due to the discovery of these items, the grand jury issued an indictment charging Sun with 10 counts of violating section 12020, subdivision (a)(2), based on the large-capacity ammunition magazines, and 43 counts of violating section 12280, subdivision (b), based on the assault weapons.

## II

## DISCUSSION

### A. Motion to "Merge"

The defense raised a motion to "consolidate" the 10 counts into a single count, resulting in the dismissal of the remaining nine counts. It based its request on the trial court's inherent power under section 954[5] to control the

---

[3] There were 510 assault weapons, such as the Omega SPS12, AK-47, Uzi, etc.

[4] Section 12020, subdivision (a)(2) prohibits the possession, importation or offer to sell "*any* large-capacity magazine." (Italics added.)

[5] Section 954 provides that an "accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.' . . ."

manner in which charges are tried. However, it did not request *severance* of the charges, the remedy for misjoinder under section 954. (Cf. § 954 ["the court . . . in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. . . ."].)

█ Section 12001, subdivision (*l*) expressly grants the authority to the People to file a separate count for *each* of the large-capacity magazines fitting the statutory description of that item. It provides that "[f]or purposes of Section 12020, a violation of that section as to *each* firearm, weapon, *or device* enumerated therein shall constitute a distinct and separate offense." (Italics added.) Without explanation, the court disregarded this statutory provision, although the People specifically argued that it applied to the 10 counts of possessing large-capacity magazines. Instead, the court agreed with the defense that no more than *one* count could be charged, irrespective of the numbers of the contraband seized.

Sun responds that the trial court must have implicitly exercised its discretion in granting the consolidation motion, which we must review for abuse of discretion. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 408 [79 Cal.Rptr.2d 408, 966 P.2d 442].) He argues that the decision must be upheld because there was a rational basis for the consolidation—i.e., all items were possessed at one time and in one place, thus implying only one offense, as held in *People v. Kirk* (1989) 211 Cal.App.3d 58 [259 Cal.Rptr. 44] and *People v. Rowland* (1999) 75 Cal.App.4th 61 [88 Cal.Rptr.2d 900].

However, the *Kirk* case occurred *before* passage of section 12001, subdivision (*l*), which was enacted in 1994 specifically "to overrule the holding in People v. Kirk," according to the legislative history for the statute. (See Stats. 1994 (1993–1994 1st Ex. Sess.) ch. 32, § 5, p. 8657; see also *People v. Rowland, supra,* 75 Cal.App.4th at p. 65.) The *Rowland* decision occurred after the passage of section 12001, subdivision (*l*), but involved a statute— section 4502—not listed in subdivision (k) or (*l*). Thus, both cases are inapplicable to the situation before us due to statutory abrogation.[6] Moreover,

---

[6] Quite recently, a sister court determined that the word "ammunition" carries both singular *and* plural meanings. (*In re Carleisha P.* (2006) 144 Cal.App.4th 912, 920 [50 Cal.Rptr.3d 777].) Thus, in a prosecution of a minor for possessing "live *ammunition*" (italics added) in violation of section 12101, subdivision (b), the prosecution could only charge one count of the statute, irrespective of the number of individual bullets found in her possession and irrespective of the different *types* of ammunition represented there. (144 Cal.App.4th at pp. 918–923.)

However, the *Carleisha P.* case is of no assistance to Sun, as he was not charged under any statute prohibiting possession of "ammunition." Rather, he was charged under section 12020, subdivision (a)(2), which prohibits possession of a "large-capacity magazine." Thus, the *Carleisha P.* holding and rationale are entirely inapplicable.

the approach has not been followed in another instance in which the word "any" was used, yet lenity was not granted, permitting multiple counts to be charged and found. (See *People v. DeGuzman* (2003) 113 Cal.App.4th 538, 545–548 [6 Cal.Rptr.3d 739] [*Kirk* holding rejected in prosecution for explosive possession offenses under §§ 12303.2 and 12303.3].)

■ Moreover, Sun's response fails to understand the definition of consolidation, as that term is used in section 954. "Consolidation of accusatory pleadings," as used in section 954, means that multiple counts, charged originally in separate pleadings, are *tried* together (§ 954), not that multiple counts are *merged* into one. Merger is a separate doctrine, and occurs only when multiple offenses are found to be necessarily included in one another. (See *People v. Ortega* (1998) 19 Cal.4th 686, 692–693 [80 Cal.Rptr.2d 489, 968 P.2d 48].) In such a case, section 654—*not* section 954—permits dismissal of those counts charging the necessarily included offenses. However, by definition, this occurs only after conviction as section 954 specifically provides "[a]n accusatory pleading may charge . . . different statements of the same offense . . . [and] the defendant may be convicted of any number of the offenses charged," notwithstanding one may be included within the other. (*Ortega, supra*, 19 Cal.4th at p. 693 ["The necessarily included offense rule is used to determine whether a defendant improperly *has been* convicted of both a greater offense and an included offense, or properly has been convicted of separate offenses." (Italics added.)].)

The court's order dismissing nine counts of the indictment must be reversed.

### B. Suppression Ruling

The trial court also granted the defense motion to suppress all evidence seized under the warrant. It stated in its ruling that it found "suppression of the evidence obtained by the State of California is required by 26 U.S.C. section 5848. The search was based on evidence obtained from the defendant's compliance with the National Firearms Act." The district attorney appeals from this order, contending there was nothing in the affidavit lifted from any records Sun filed or kept as required by the National Firearms Act (NFA); and, even if there was such evidence, there is no authority that a warrant issued by a magistrate should be suppressed notwithstanding any arguable violation of title 26 United States Code section 5848(a). Lastly, the

district attorney contends, the fruits of an executed search warrant are admissible under the "good faith" exception of *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], irrespective of errors made prior to its issuance. Because suppression of evidence is only possible if *mandated* by federal law (see Cal. Const., art. I, § 28, subd. (d)), suppression was, he argues, unauthorized in this situation.

We review rulings on motions brought under section 1538.5 by the standard established in *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]: "In [a suppression motion] the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. . . . The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. . . . [I]f such review is . . . sought, it becomes the ultimate responsibility of the appellate court to measure the facts, *as found by the trier,* against the constitutional standard of reasonableness." (Italics added; see also *People v. Manning* (1973) 33 Cal.App.3d 586, 598–599 [109 Cal.Rptr. 531].)

The affidavit for the search warrant for Sun's home and business related that the federal inspector *examined* Sun's records and *then determined* that a series of assault weapons were listed on those documents, weapons that the inspector knew were prohibited by California law but not by federal law. He then confirmed the presence of 20 of those assault shotguns in Sun's inventory before contacting the state authorities with his observations and information. The language in the affidavit indicates that the inspection and observation of those assault weapons were triggered by the records provided to the federal inspector by Sun. Thus, the records that Sun provided to the inspector were the exclusive source of information from which the entire investigation grew.

Title 26 United States Code section 5848(a) provides: "No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence."

Subsection (b) of 26 United States Code section 5848 provides the sole exception to that prohibition: "Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law *with respect to the furnishing of false information.*" (Italics added.)

The district attorney contends that this privilege or immunity grant applies only to evidence proffered in a criminal *trial*, not to information alleged in a search warrant affidavit or any nontrial aspect of a criminal prosecution. He relies on two cases from the federal district court in Michigan to support his position: *U.S. v. Wolfe* (E.D.Mich. 1999) 32 F.Supp.2d 945 and *U.S. v. Hunter* (E.D.Mich. 1994) 843 F.Supp. 235. He acknowledges these opinions are not binding on our court, but argues they provide compellingly persuasive support. We disagree: Not only is there higher authority contradicting that interpretation, but both cases are clearly distinguished—legally and factually—from the present situation.

In *Wolfe*, a state-issued search warrant was executed on Wolfe's home, and the officers found marijuana, marijuana-cultivation equipment, and a stash of illegal firearms. The *federal* authorities proceeded to obtain an indictment against Wolfe for these violations. In an original motion to suppress, the federal court denied the motion, which was then amended and again denied by the federal court. In its initial ruling, the federal court found that the warrant was supported by adequate probable cause and, even if not, the officers reasonably relied in good faith on the magistrate's assessment. Thus, suppression was unjustified. (*U.S. v. Wolfe, supra,* 32 F.Supp.2d at pp. 948–949.)

Subsequent to the initial search, the state officers obtained a second search warrant—whose affidavit included a reference to Wolfe holding a federal firearms license—and reentered the premises to search for tax records. Those records were then turned over to the federal prosecuting authorities by the state officers. Wolfe brought another suppression motion, contending the reference to his federal firearms license in the affidavit breached the confidentiality of tax returns provision in the NFA. (Cf. 26 U.S.C. § 6103.) This motion was denied because suppression was not an appropriate remedy for a breach of confidentiality under that statute; moreover, there was no evidence that mere status as a licensee constituted tax return information under this confidentiality provision. (*U.S. v. Wolfe, supra,* 32 F.Supp.2d at pp. 951–953.)

In response, Wolfe contended the privilege or immunity statute of 26 United States Code section 5848 applied to his situation, thereby taking his case out of the exclusive application of the confidentiality statute. The court relied on an earlier opinion—*U.S. v. Hunter, supra,* 843 F.Supp. 235—and reiterated its

interpretation of the privilege statute to be limited to evidence admitted in a criminal trial. Relying on the *Hunter* opinion, the federal court held that information mandatorily disclosed under the NFA by a licensee can be used for *investigative* purposes. (*U.S. v. Wolfe, supra*, 32 F.Supp.2d at p. 953.) It is for this point that the district attorney invokes both the *Hunter* and *Wolfe* opinions, arguing Sun's records were only used for investigative purposes and thus the privilege statute of section 5848 was inapplicable.

 Higher authority appears to deal with the matter quite differently. In *United States v. Freed* (1971) 401 U.S. 601 [28 L.Ed.2d 356, 91 S.Ct. 1112], the United States Supreme Court noted that it had previously found certain provisions of the NFA to violate the Fifth Amendment. (See *Haynes v. United States* (1968) 390 U.S. 85, 96–100 [19 L.Ed.2d 923, 88 S.Ct. 722, 1968-1 C.B. 615].) In response to the *Haynes* opinion, Congress addressed the fatal errors, revising the NFA by specifically including the privilege or immunity provision of 26 United States Code section 5848(a). As noted in *Freed*, "The scope of the privilege extends, of course, to the *hazards* of prosecution under state law for the same or similar offenses." (*Freed, supra*, 401 U.S. at p. 604, italics added.)

In *Freed*, a California resident and his wife were indicted for possessing "unregistered" hand grenades. Registration required information be divulged and certain tax burdens be met before transfer could be done under the revised NFA. Freed responded to the indictment, contending his Fifth Amendment rights were violated as established in *Haynes*, and the NFA as interpreted by *Haynes* required evidence of knowledge, which his indictment failed to allege. Justice Douglas rejected the contentions, emphasizing that Congress had specifically created the privilege provision of 26 United States Code section 5848 in response to the *Haynes* opinion and had thereby cured the Fifth Amendment problem. (*United States v. Freed, supra*, 401 U.S. at p. 605.) Moreover, the NFA required no scienter element. (*United States v. Freed*, at p. 607.) In so ruling, the Supreme Court rested its conclusion on the Solicitor General's "represent[ation]s to us that *no information filed* is as a matter of practice disclosed to *any* law enforcement authority," and that "the information in the hands of Internal Revenue Service, as a matter of practice, is not available to state or other federal authorities and, as a matter of law, cannot be used as evidence in a criminal proceeding with respect to a prior or concurrent violation of law." (*Id.* at pp. 604–606, italics added.) It emphasized this point in assessing the self-incriminatory potential of the statute to be " 'merely trifling or imaginary.' " (*Id.* at p. 606.) It found a lack of self-incrimination potential because of "the unavailability of the registration data, as a matter of administration, to local, state, and other federal agencies. . . . Since the state and other federal agencies *never see the information*, [Freed] is left in the same position as if he had not given it, but 'had claimed his privilege in the absence of a . . . grant of immunity.' [Citation.] This,

combined with the protection against use to prove prior or concurrent offenses, satisfies the Fifth Amendment requirements respecting self-incrimination." (*Ibid.,* citations omitted, italics added; see also *Gonzales v. Superior Court* (1980) 117 Cal.App.3d 57, 67–68 [178 Cal.Rptr. 358].[7])

Such strong assurances that the Fifth Amendment is not violated are entirely undermined if, as the district attorney encourages us, we hold the provisions of the privilege statute are to be limited to actual trial evidence and do not apply to information that triggers a prosecution. Other federal jurisdictions have not followed such a restricted interpretation of the privilege or immunity provision. In *United States v. Bright* (5th Cir. 1973) 471 F.2d 723, not only was the provision understood to bar the use of any registration information to revoke parole, but the circuit court relied on the United States Attorney's representations that "no information obtained from Bright's registration of the shotgun would be available for use" before it concluded Bright's Fifth Amendment rights had not been threatened by the NFA requirements. (471 F.2d at p. 727.)

The district attorney's interpretation of the privilege or immunity provision, moreover, overtly contradicts the language of the statute itself. "No *information* or evidence obtained from . . . records required to be . . . retained by a natural person in order to comply with any provision of [the NFA] . . . shall . . . be used, directly *or indirectly*, as evidence against that person in a criminal proceeding . . . ." (26 U.S.C. § 5848, italics added.) Had Congress intended that a document submitted by a person for either licensing or registration purposes under the NFA was barred only from being admitted in a *trial* against that person, it could have easily said so. Instead, Congress specifically spelled out that it was not just *evidence* that was privileged, but any *information* used either *directly or indirectly* as evidence in a criminal proceeding. No ambiguity exists in the language of the statute; thus, no interpretation needs to be crafted to explain or eliminate that ambiguity. (See Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the . . . Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, *or to omit what has been inserted*; . . . a construction is, if possible, to be adopted as will give effect to all." (Italics added.)].)

---

[7] *Gonzales v. Superior Court, supra,* 117 Cal.App.3d 57, involved interrogatories supplied to a series of alleged fathers of minor children whose mothers received aid via Aid to Families with Dependent Children funding. The District Attorney of Orange County filed civil paternity actions to establish the paternity of these children as a step to procure the fathers' reimbursement payments to the county for these funds. The interrogatories attempted to obtain the fathers' admissions to allegations of paternity. (*Id.* at pp. 59–61.)

Moreover, the *Wolfe* opinion relied exclusively and entirely on selected language from *U.S. v. Hunter, supra*, 843 F.Supp. 235, as the authority for its unique holding. The earlier *Hunter* opinion stated that section "5848(a) bar[red] the use of such records *as evidence*." (*Id.* at p. 252, original italics.) However, it did not mean that to be the *exclusive* application of the privilege statute. The *Hunter* court went on to say that it "read[] this provision to prohibit the introduction of protected records in a trial; it does not appear to proscribe the Government's utilization of the records so far *in this case* in order to investigate and indict Defendants." (*Ibid.*, italics added.) The inapplicability of the privilege was not due to the *investigatory use* of the information; it was due to the exception to the privilege found in 26 United States Code section 5848*(b)*. The statutory exception to the privilege applied to *subsequent* offenses relating to false information. Hunter and his colleagues were charged with conspiracy because they submitted allegedly *false* information in their applications to transfer machineguns and machinegun conversion kits. (843 F.Supp. at pp. 238–239.) Additionally, they allegedly submitted the falsified applications before engaging in the alleged overt acts in furtherance of the conspiracy for which they were charged. Thus, the statutory exception found in 26 United States Code section 5848(b) applied, and Hunter could not invoke the privilege and immunity provisions of 26 United States Code section 5848(a).

The *Hunter* court emphasized that 26 United States Code section 5848(b) created an exception to the privilege or immunity provisions of section 5848(a), and that this exception was for " 'future crimes' and 'furnishing false information'. . . ." (*U.S. v. Hunter, supra*, 843 F.Supp. at p. 252.) It found the defendants' alleged conspiracy was a *future crime of furnishing false information* under the NFA and the supplementary legislation known as the Gun Control Act of 1968 (18 U.S.C. § 921 et seq.). (843 F.Supp. at pp. 250–253.) Thus, the protection of the privilege conferred by 26 United States Code section 5848(a) was unavailable to the defendants, not because the defendants' applications were used as the basis for an investigation, but because the case was a "future crime" involving the "furnishing [of] false information" specifically excepted under subsection (b) of the statute.

The *Wolfe* court lifted the excerpted language from *Hunter*, but failed to retain the context in which it was made. In short, the *Hunter* opinion on which the *Wolfe* holding relied fails to support the district attorney's argument in the case before us: *Hunter* holds that the statutory exception found in 26 United States Code section 5848(b), remains the sole instance in which information or evidence provided by a firearms dealer under the NFA may be used *in any way* against that dealer. That one instance is if the dealer is charged with a *future crime* or based on *falsified information, statutorily mandated to be given.*

Sun is faced with neither a crime resulting from his falsification of his NFA documents nor a future crime occurring subsequent to the transactions reflected in his NFA records. The documents reviewed by the federal inspector reflected Sun's *concurrent* possession of firearms. Thus, he properly was protected by the privilege or immunity provisions of 26 United State Code section 5848 at the time the federal inspector breached the confidentiality protections of 26 United States Code section 6103 and divulged the privileged information to the state authorities.

Amicus curiae, the Attorney General of California, argues that the safety of California citizens requires that we *encourage* the cooperation between federal and state authorities as practiced in the case before us. Additionally, he contends the NFA was *not* the authority under which Hoffpauer inspected Sun's records; it was the Gun Control Act of 1968 which empowered Hoffpauer to inspect, and there is no recordkeeping responsibility under that statute. Thus, he argues, there was no basis to apply the privilege protection of 26 United States Code section 5848(a)—which relates to the NFA, not the Gun Control Act—much less to suppress the evidence. Finally, amicus curiae proposes that none of the items observed by Hoffpauer—and seized under the search warrant—fell under the federal definition of "firearms" covered by the NFA. This latter argument *appears* to fail: 26 United States Code section 5845(a) defines a firearm for the purposes of the NFA in very specific detail and there is no indication in the record whether the seized items fit this description,[8] but the chapter also defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. . . ." (26 U.S.C. § 5845(b).) This definition is essentially identical to that for a machinegun found in section 12200, possession of which is generally barred under state law. (See § 12220, subd. (a).) From the information presented in the warrant's affidavit and implicitly found by the trial court, the statute was applicable. No evidence was presented at the suppression hearing to contradict this finding.

Factual allegations such as those made by amicus curiae are more properly presented to the trial court than to us in the first instance. We review the record as preserved from below to determine if the trial court ruled properly. It must be noted that the *district attorney* urged the trial court that no evidence other than the affidavit in conjunction with the pleadings was needed to resolve the motion to suppress.[9] Had these factual allegations been

---

[8] It is unknown to us whether most of the seized items fit these very detailed specifications, as the record is devoid of any such discussion.

[9] Although the record is somewhat obscure, the district attorney declared, "I want to make it clear *we don't dispute what the facts are*. We do dispute there was a Fifth Amendment violation. They claim we conceded that, and certain other things. *I think those are legal issues*

raised *and resolved* in the lower court, we would review those contentions and resolutions. We cannot resolve factual allegations raised for the first time on appeal. (See *People v. Lawler, supra,* 9 Cal.3d at p. 160; *People v. Manning, supra,* 33 Cal.App.3d at pp. 598–599 [" ' " 'A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the [trial] court *sitting as a finder of fact.'* . . ." . . . In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " [Original italics.].)

Nothing we say here in any way seeks to discourage the continued cooperation between state and federal police authorities. To the contrary, we encourage it *consistent with the law established for both those jurisdictions.* In this instance, however, the Congress, in direct response to United States Supreme Court mandate, has provided that information *compelled* from a weapons dealer may not be used against him in a criminal proceeding of any kind, apart from the exception provided in 26 United States Code section 5845(b). We abide by that clear declaration, as must the police authorities in all jurisdictions.

Finally, we address the most difficult question in this quagmire. Should one police agency be able to clothe itself with the robe of good faith, when it obtains information from another police agency in direct contradiction of federal law, and then uses it for the very purpose prohibited by the federal law? Neither Hoffpauer nor Maher informed the magistrate—to whom Maher presented the affidavit—that 26 United States Code section 5848(a) protected the information from which Hoffpauer learned of the assault weapons. Nonetheless, the district attorney and amicus curiae join in arguing that suppression was barred once the magistrate placed his or her imprimatur to search on the warrant. (See generally *United States v. Leon, supra,* 468 U.S. 922 (*Leon*).)

█ The good faith exception found in *Leon* rests on the deterrent purpose for the exclusionary rule. Exclusion as a remedy for Fourth Amendment violations[10] was designed to deter police misconduct. Thus, when an officer acts in objective good faith reliance on a search warrant, "[p]enalizing the

---

that the court could resolve; *they are not issues that need to be resolved with witness testimony.* So therefore, that's why I'm entering this stipulation." (Italics added.)

[10] We do not intend any comment on the exclusionary rule as applied to remedy due process violations. (See, e.g., *People v. Galland* (2006) 146 Cal.App.4th 277, 286 [52 Cal.Rptr.3d 799].)

officer for [a] magistrate's error, rather than his [or her] own, cannot logically contribute to the deterrence of Fourth Amendment violations." (*Leon, supra,* 468 U.S. at p. 921.)

On the other hand, the officer's reliance in *objective* good faith is the crux of the rule. In *People v. Jackson* (2005) 129 Cal.App.4th 129 [28 Cal.Rptr.3d 136], the fruits from the search permitted by warrant were suppressed because the information establishing probable cause for that warrant was obtained from an *illegal* wiretap. As the wiretap authority, 18 United States Code section 2510 et seq., was established long before the judicially created "good faith exception," its bar was prevailing over the exception crafted by the Supreme Court after its passage. Moreover, Congress had never attempted to provide—although given the opportunity—such a loophole in the intervening years. "Moreover, the policy reasons that led to the adoption of a good faith exception to the judicial exclusionary rule in cases involving search warrants do not apply to the statutory exclusionary rule in cases involving wiretap orders. In a case involving a search warrant, the true check on law enforcement's abuse of power was 'the detached scrutiny of a neutral magistrate.' To obtain a wiretap, the person seeking the order must first obtain the approval for the wiretap *from the United States Attorney General* or an authorized designee. [Citation.] Hence, 'if an appellate court determines wiretap evidence was gathered under a legally erroneous order, the government cannot place the blame on the magistrate who issued the order.' [Citation.]" (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2006 Supp.) Illegally Obtained Evidence § 12, pp. 120–121 [italics added].)

■ By analogy, the same thing occurred here. Local law enforcement obtained information from another jurisdiction's law enforcement agent who *under the authority which granted him the power to inspect, also was ordered to keep confidential and privileged all information obtained from the entity he inspected.* Nonetheless, the local agents presented the information to a magistrate and then blanketed themselves under the sanitizing "robe" of that unknowing magistrate once the warrant was signed. Such manipulation of a magistrate will be repeated if we permit one police agency to use information that another police agency is barred from using. Police reliance cannot be deemed in "objective good faith" when the original agent is aware the incriminating information was obtained by less than legal means. As the state's reliance on the authority of the magistrate issuing the warrant was not in objective good faith, suppression of the fruits of the search was proper.

## III

## DISPOSITION

In case No. G036443, the trial court's order suppressing the evidence and then dismissing the remaining indictment is affirmed. In G035328, the trial court's order, dismissing nine counts of a violation of section 12020, subdivision (a)(2), is reversed. The case is remanded with the following directions: The trial court must determine if dismissal of the remanded nine counts is now required based on the seizure of evidence deemed in violation of the Fourth Amendment as upheld in case No. G036443. If so, the trial court must dismiss the remaining nine counts in the indictment. If not, and the People have evidence to prove those counts extraneous to the fruits of the search under the warrant, those counts may proceed.

Bedsworth, J., and Fybel, J., concurred.