*In re* FORFEITURE OF $25,505

Docket No. 173325. Submitted October 1, 1996, at Detroit. Decided
December 20, 1996, at 9:40 A.M. Leave to appeal sought.

The Wayne County Prosecutor initiated proceedings in the Wayne Cir-
cuit Court for the forfeiture pursuant to the controlled substances
act of $25,505 found in the basement ceiling of the home of claim-
ant Carey Robinson, Jr., the forfeiture of furniture found in the
apartment of claimant Robert Robinson, Carey's son, and the forfei-
ture of other items. The forfeitures were sought in connection with
Robert's drug-dealing activities. The court, Richard C. Kaufman, J.,
entered an order of forfeiture with regard to the $25,505 and the
furniture. The claimants appealed.

The Court of Appeals *held*:

1. The trial court properly denied the claimants' motion for a
directed verdict regarding the seized cash. The prosecution carried
its burden of proving by a preponderance of the evidence that the
cash was substantially related to the drug trafficking.

2. The trial court erred in denying the claimants' motion for a
directed verdict with regard to the furniture. The prosecution failed
to meet its burden of proving that the furniture was purchased with
drug proceeds. The part of the forfeiture order regarding the furni-
ture must be reversed.

3. The police officers failed to comply with the requirement of
MCL 780.655; MSA 28.1259(5) that the seized cash be tabulated by
the police in the presence of the claimant from whose premises it
was taken. Violations of this statute do not require exclusion of the
seized property from the factfinder in a forfeiture proceeding. The
appropriate remedy is normally to instruct the factfinder that it
may infer that evidence unpreserved because of violations of the
statute would have favored the claimant. The effect on a forfeiture
proceeding of this presumption that unpreserved evidence would
have favored the claimant will depend on how probative the lost
evidence is of the ultimate issue: whether the property is linked to
criminal activity. The part of the forfeiture order regarding the cash
must be vacated and the matter must be remanded for considera-
tion of the effect of the police violations of the statute on the for-
feiture in light of this opinion.

4. The trial court did not clearly err in its assessment of the credibility of Carey and the police officers.

5. The search warrant was valid.

6. The forfeiture did not violate the Double Jeopardy Clause, US Const, Am V; Const 1963, art 1, § 15, or the Excessive Fines Clause, Const 1963, art 1, § 16.

Affirmed in part, reversed in part, vacated in part, and remanded.

1. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES — BURDEN OF PROOF.

Anything of value that is furnished or intended to be furnished in exchange for a controlled substance, that is traceable to an exchange for a controlled substance, or that is used or intended to be used to facilitate any violation of the controlled substances act is subject to forfeiture; the prosecution must prove by a preponderance of the evidence that the item is subject to forfeiture (MCL 333.7521[1][f]; MSA 14.15[7521][1][f]).

2. FORFEITURES AND PENALTIES — SEARCH WARRANTS — TABULATION REQUIREMENT.

Violations of MCL 780.655; MSA 28.1259(5) do not require exclusion of the seized property from the factfinder in a forfeiture proceeding; an appropriate remedy where the police violate the tabulation requirement of the statute and the claimant alleges prejudice arising therefrom in a forfeiture proceeding is to instruct the factfinder that it may infer that the evidence that is unpreserved because of the violation would have favored the claimant; a violation of § 5 resulting in the loss of relevant evidence raises a rebuttable presumption that the unpreserved evidence would have been adverse to the police.

3. FORFEITURES AND PENALTIES — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

Civil forfeitures generally do not constitute punishment for purposes of the Double Jeopardy Clause (US Const, Am V; Const 1963, art 1, § 15).

4. FORFEITURES AND PENALTIES — CONSTITUTIONAL LAW — EXCESSIVE FINES CLAUSE — DRUG PROCEEDS.

A legitimate forfeiture of drug proceeds will by definition be proportional to the amount of drugs sold and the harm inflicted by the drug sale; such forfeitures of drug proceeds do not implicate the Excessive Fines Clause (Const 1963, art 1, § 16).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting

Attorney, *Andrea L. Solak*, Chief Special Operations, and *Mary Sue Czarnecki*, Assistant Prosecuting Attorney, for the plaintiff.

*J. Michael Hill, P.C.* (by *J. Michael Hill* and *William E. Gray*), for the claimants.

Before: MARKMAN, P.J., and SMOLENSKI and G. S. BUTH,* JJ.

PER CURIAM. Claimants Robert Robinson and his father, Carey Robinson, Jr., appeal as of right a 1994 order forfeiting property relating to Robert's drug-dealing activities. We vacate in part and remand in part with respect to the forfeiture of cash found in Carey's basement ceiling and reverse with respect to the furniture found in Robert's apartment.

Claimants first contend that the trial court erred in denying their motion for a directed verdict. They claim that the prosecutor failed to produce evidence to prove that the cash and furniture at issue were proceeds of drug trafficking. "Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance, . . . that is traceable to an exchange for a controlled substance, . . . or that is used or intended to be used to facilitate any violation of [the controlled substances act]," is subject to forfeiture. MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f). "In Michigan, forfeiture proceedings are in rem civil proceedings and the government has the burden of proving its case by a preponderance of the evidence." *In re Forfeiture of $15,232*, 183 Mich App 833, 836; 455 NW2d 428 (1990). To evaluate a motion for a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

directed verdict, a court considers the evidence in a light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party. *Garavaglia v Centra, Inc*, 211 Mich App 625, 632; 536 NW2d 805 (1995). "Possession of [United States currency] is prima facie evidence of ownership and the burden of producing evidence regarding ownership rests upon the person disputing such ownership." *In re Forfeiture of $19,250*, 209 Mich App 20, 27; 530 NW2d 759 (1995).

The prosecution met its burden of proof regarding the cash found in the ceiling of Carey's basement. The prosecution demonstrated that Robert was involved in drug trafficking and had probably concealed his cash proceeds. It established that he had access to his father's residence, that he collected mail there, and that he used that address when he registered his vehicles. The officers who conducted the search testified that Carey was surprised when he learned of the cash found in his basement. The cash at issue was a large amount and was found in the ceiling of Carey's basement. Considering the evidence in the light most favorable to the prosecution, the prosecution carried its burden of proving by a preponderance of the evidence that the cash seized was substantially related to the drug trafficking. The trial court properly denied claimants' motion for a directed verdict regarding the seized cash.

However, we find that the prosecution failed to meet its burden regarding the furniture found at Robert's apartment. The prosecution provided compelling evidence that Robert was involved in drug trafficking. But it failed to produce evidence establishing any link between the furniture and the drug trafficking that

would make the furniture subject to forfeiture under § 7521(1)(f). Obviously, many factors may be relevant in determining whether seized property is linked to drug trafficking. For example, a prosecutor might meet this burden by presenting evidence showing that a claimant purchased the property at issue at a time when he had no alternative source of income or savings other than drug trafficking. Evidence regarding the value of seized property, the manner of payment therefor, and the connection in time of such purchases to drug deals may also aid the prosecution in meeting its burden. Here, a police officer testified that he assumed that the furniture was the proceeds of the drug trafficking because Robert had been unemployed for some time when arrested. This is mere supposition and insufficient to establish that Robert used drug proceeds to purchase the furniture. The trial court simply concluded that "all of the items he owned were more than likely purchased with proceeds from the illegal sale of drugs." Section 7521(1)(f) requires more than such conclusory evidence linking property to drug activities in order to subject the property to forfeiture. In the absence of more substantial evidence indicating that the furniture was purchased with drug proceeds, the trial court erred in denying claimants' motion for a directed verdict with respect to the furniture.

Claimants next contend that the officers' failure to comply with MCL 780.655; MSA 28.1259(5) mandates reversal of the forfeiture order. MCL 780.655; MSA 28.1259(5) states, in pertinent part:

> When an officer in the execution of a search warrant finds any property or seizes any of the other things for which a search warrant is allowed by this act, the officer, in

the presence of the person from whose possession or premises the property or thing was taken, if present, or in the presence of at least 1 other person, shall make a complete and accurate tabulation of the property and things so seized. . . . The property and things so seized shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence on any trial.

Here, the officers did not count the cash in Carey's presence. Nor did they sequester the cash to preserve it for trial. They merely deposited it in a bank account. Plaintiff does not dispute the contention that the police failed to comply with § 5; we therefore assume, without deciding, that the police violated § 5 here. We believe that such conduct seriously undermines the balance established by the Legislature between the encouragement of effective law enforcement activities and the maintenance of the integrity of such activities. Carey contends that these violations of the statute prejudiced him because they inhibited his ability to prove his claims that the police seized more than the $25,505 in cash reported and that the money was his, rather than his son's, e.g., by testing the cash for fingerprints or traces of drugs.

In *People v Tennon*, 70 Mich App 447, 448; 245 NW2d 756 (1976), the lower court found that there was no evidence that a tabulation of seized evidence was made in the defendant's presence as required by § 5. The *Tennon* Court noted that no evidence suggested that the search warrant at issue had been issued or executed illegally. *Id.* at 449. It stated:

Rather, the conduct questioned involved the ministerial duty to tabulate an inventory or property in a certain manner, primarily so as to avoid any possible mistake, theft,

wrongful inclusion or later surprise at trial by parties handling defendant's property. [*Id.*]

The Court held that the reasoning behind § 5 "cannot be related to or tested by the constitutional rights and safeguards that *Mapp* [*v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961)] and its progeny were meant to protect." *Tennon, supra* at 449. It concluded that such a ministerial defect " 'did not void the effectiveness of the warrant or contaminate the evidentiary value of the property seized under the warrant.' " *Id.* at 450, quoting *People v Phillips*, 163 Cal App 2d 541, 548; 329 P2d 621 (1958). In *People v Myers*, 163 Mich App 120, 122; 413 NW2d 749 (1987), this Court held that "[i]t is clear that not every violation of MCL 780.655; MSA 28.1259(5) amounts to error requiring reversal." It held that any defect in failing to give the defendant a copy of the search warrant at issue was "hypertechnical in nature and did not prejudice defendant and, as a result, the evidence seized pursuant to the search warrant should not be suppressed." *Myers, supra* at 122. Similarly, this Court held in *People v Lucas*, 188 Mich App 554, 573; 470 NW2d 460 (1991), that a "hypertechnical" violation of § 5 did not require suppression of the evidence, "particularly where defendant cannot articulate any harm or prejudice that resulted." Accordingly, even in the context of criminal proceedings, suppression of the evidence is not a necessary remedy for a violation of § 5.

To determine the appropriate remedy for a violation of § 5 where a claimant alleges prejudice arising therefrom in a forfeiture proceeding, we first consider the interests protected by § 5. The *Tennon* Court expressed the interest behind the tabulation require-

ment as avoiding "any possible mistake, theft, wrongful inclusion or later surprise at trial by parties handling defendant's property." *Id.* at 449. We note that § 5 states that if the person from whom property is seized is not present, it is sufficient for "at least 1 other person" to be present when the officer makes a tabulation. This language suggests to us that the principal focus of the statute is to ensure police integrity rather than to create a personal legal right in the claimant. The preservation of evidence for the benefit of a party from whom property is seized is a clear benefit of § 5 but only an incidental one. In light of this purpose, the principal guarantor of § 5 will be the internal disciplinary procedures of the police themselves and the direction of responsible officials within the communities within which the police operate. As indicated above, we believe that violations of such statutory requirements must be treated seriously.

Next, we consider whether there are remedies, short of summarily returning seized property to a claimant, that would effectively redress violations of § 5. Here, Carey claims that the officers seized more than the amount of cash reported and that the money seized belonged to him, not to his son. He argues that the violations of § 5 prejudiced his ability to prove these claims. Because § 5 places procedural obligations on the police, a remedy must be fashioned to attempt to make a claimant whole when police violations of § 5 result in the loss of relevant evidence. Recognizing that any remedy must balance competing interests, we conclude that an effective remedy for a violation of § 5 is normally to instruct the factfinder that it may infer that evidence unpreserved because of violations of the statute would have favored the

claimant. In other words, a violation of § 5 resulting in the loss of relevant evidence raises a rebuttable presumption that the unpreserved evidence would have been adverse to the police. The police thus act at their peril when they fail to observe the requirements of § 5. The effect on a forfeiture proceeding of this presumption that unpreserved evidence would have favored the claimant will, of course, depend on how probative the lost evidence is of the ultimate issue: whether the property is linked to criminal activity. Although not at issue here, we specifically note that evidence that the police *intentionally* violated § 5 might make a property seizure sufficiently questionable that the factfinder might conclude that the seized property must be returned to the claimant regardless of evidence connecting it to criminal activity.

Here, the effect of this remedy would be that the factfinder could presume that Carey's fingerprints would have been found on the seized cash and that neither Robert's fingerprints nor traces of cocaine would have been found on it. We believe that even if such evidence could have been obtained from the cash, it would not have excluded the possibility that the cash at issue was proceeds of Robert's drug activity. Indeed, we do not believe that such evidence would have been likely to have resulted in a contrary decision by the factfinder. In ruling with regard to claimants' motion for summary disposition, the trial court drew a similar conclusion:

> Even assuming what you say is true, the remedy is, at most, that the fact finder is instructed . . . that if this money had not been removed from the ability of the defendant to have it tested, that it would have showed that he had his

> fingerprints on it. And then the judge would give whatever weight for that, potentially. I could see that as a likely remedy since I think you're right that the statute says, and I've indicated this before, that the police or prosecutor at their own peril don't keep all property they want to forfeit available, whether it's cash or anything else.

Further, the issue whether the police seized more than the amount of money reported becomes an issue of credibility for the factfinder. The trial court's findings at the conclusion of the forfeiture hearing indicate that it considered Carey's contentions that the police seized more cash than was reported and that the cash found belonged to him, not Robert. However, because we here delineate a rebuttable presumption as an appropriate remedy for violations of § 5, we vacate the forfeiture order regarding the cash seized from Carey's basement ceiling and remand for consideration of the effect of the police violations of § 5 on this forfeiture in light of this opinion.

Carey next claims that the trial court erred in finding that he was a less credible witness than the officers. "This Court reviews a trial court's findings of fact for clear error." *Triple E Produce Corp v Mastronardi Produce, Ltd,* 209 Mich App 165, 171; 530 NW2d 772 (1995). "[Q]uestions of credibility and intent are properly resolved by the trier of fact." *Id.* at 174. Carey claims that the trial court resolved the credibility dispute on the basis of a mistaken understanding of a connection between a robbery at Carey's mother's house and his acquisition of false-bottom cans for storing money. Even if we assume that the trial court misunderstood the connection between these factors, there was ample basis for the court to question and disbelieve Carey's testimony

indicating that the money seized was his own. He also complains that the trial court failed to discount the credibility of the police officers on the basis of discrediting evidence (e.g., inconsistencies between their testimony and evidence that they failed to comply with the requirements of § 5.) The record indicates that the court was aware of this evidence. We find no clear error in the trial court's assessment of the credibility of Carey and the police officers. See MCR 2.613(C).

Carey next claims that the cash was seized pursuant to an invalid warrant. He claims that the warrant was invalid because it did not state with particularity the items to be seized and because it was based on the uncorroborated allegations of an informant. "Under both federal constitutional law and Michigan search and seizure law, the purpose of the particularization requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *People v Zuccarini*, 172 Mich App 11, 15; 431 NW2d 446 (1988). "The degree of specificity required depends on the circumstances and types of items involved." *Id.*

Here, the search warrant covered "[a]ll monetary and material proceeds of controlled substance trafficking including safe deposit box keys, real estate records, phone books, magnetic storage material and items indicative of controlled substance trafficking . . . ." This language is similar to the language found sufficiently specific in *Zuccarini. Id.* at 15-16. The specification that the items be related to drug trafficking placed an adequate limit upon the officers' discretion.

Accordingly, the search warrant at issue met the particularization requirement. The search warrant at issue was based on a police officer's affidavit. Although the officer alleged that he first learned of Robert's drug activities through a confidential informant, the remainder of the allegations in the affidavit were based on the police investigation of Robert. The affidavit fully complied with MCL 780.653; MSA 28.1259(3).

Finally, claimants claim that the forfeiture order violated *Austin v United States*, 509 US 602; 113 S Ct 2801; 125 L Ed 2d 488 (1993). In *Austin*, the United States Supreme Court held that statutory in rem forfeitures are, at least in part, punitive in nature. *Id.* at 619. Accordingly, it held that they were subject to the limitations of the Eighth Amendment's Excessive Fines Clause. *Id.* at 622. Relying on *Austin*, claimants argue that the forfeiture violated the Double Jeopardy Clause, US Const, Am V; Const 1963, art 1, § 15. However, the United States Supreme Court recently held that "civil forfeitures generally . . . do not constitute 'punishment' for purposes of the Double Jeopardy Clause." *United States v Ursery*, 518 US ___; 116 S Ct 2135, 2138; 135 L Ed 2d 549, 557 (1996). Accordingly, the forfeiture here did not violate the Double Jeopardy Clause.

Claimants also argue that the seizure of the cash in Carey's basement constituted a violation of the Excessive Fines Clause. However, the United States Supreme Court has never determined that the Excessive Fines Clause is applicable to the states through the Fourteenth Amendment. *People v Antolovich*, 207 Mich App 714, 716; 525 NW2d 513 (1994). Cf. *TXO Production Corp v Alliance Resources Corp*, 509 US

443, 470; 113 S Ct 2711; 125 L Ed 2d 366 (1993) (Justice Scalia concurring). Nevertheless, we will briefly consider whether the seizure of the cash violated Michigan's counterpart to the Excessive Fines Clause, Const 1963, art 1, § 16. Here, the money in Carey's basement was seized as the proceeds of Robert's drug sales. In *United States v Tilley*, 18 F3d 295, 299-300 (CA 5, 1994), the court held that *Austin* was inapplicable to forfeiture of drug proceeds. The *Tilley* Court distinguished drug proceeds forfeitures from real estate forfeitures on the basis that the latter are not necessarily proportional to the costs and harms of the criminal activity. *Tilley, supra* at 300. It held that

> the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale. [*Id.*]

In *United States v Salinas*, 65 F3d 551, 554 (CA 6, 1995), the court held:

> Not only are drug proceeds inherently proportional to the damages caused by the illegal activity, . . . but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity.

We believe these cases to be persuasive and conclude that a legitimate forfeiture of drug proceeds will by definition be proportional to the amount of drugs sold and the harm inflicted by the drug sale. Accordingly, forfeitures of drug proceeds do not implicate the excessive fines provision of art 1, § 16.

For these reasons, we reverse the forfeiture order with respect to the forfeiture of Robert's furniture, vacate in part and remand for reconsideration of the effect of the police violations of § 5 on the forfeiture of the cash seized from Carey's basement ceiling, and otherwise affirm the order.