PEOPLE v JAGOTKA

Docket No. 197753. Submitted January 13, 1998, at Detroit. Decided October 27, 1998, at 9:10 A.M. Leave to appeal sought.

Michael J. Jagotka was charged in the 52-1 District Court with operating a vehicle while under the influence of intoxicating liquor. The court, Brian W. MacKenzie, J., granted the defendant's motion to suppress blood test results on the basis that the police violated MCL 780.655; MSA 28.1259(5) (hereafter § 5) by failing to preserve the blood sample for trial. The prosecution appealed by leave granted to the Oakland Circuit Court. The court, Jessica R. Cooper, J., entered an order reversing the district court's order on the basis of the prosecution's arguments that the implied consent statute, MCL 257.625a; MSA 9.2325(1), does not require the blood sample to be preserved because the test result, not the blood sample, is the evidence and that the defendant's due process rights were not violated. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. This case is not governed by the provisions of the implied consent statute because the police obtained the blood sample pursuant to a search warrant obtained after the defendant refused to submit to a Breathalyzer test. The provisions of § 5 govern this case.

2. Section 5 was violated when the blood sample was destroyed and not safely kept for the purpose of being produced or used as evidence at trial. The statute itself does not provide a remedy for its violation.

3. An appropriate remedy in a criminal case where § 5 is violated resulting in a loss of relevant evidence is to instruct the factfinder that it may infer that evidence unpreserved because of violations of the statute would have favored the defendant. However, in order to warrant an adverse inference instruction, a defendant must articulate how the violation of § 5 prejudiced the defendant.

4. The defendant articulated how he was prejudiced in this case by explaining how the lost evidence might be expected to play a significant role in his defense. An adverse inference instruction is appropriate at the defendant's trial. The order of the circuit court reversing the district court's order suppressing the blood test results must be affirmed but modified to require an adverse infer-

ence instruction at the defendant's trial. The matter must be remanded for trial.

Affirmed as modified and remanded.

MARKMAN, P.J., concurred with the majority's interpretation of § 5 and its finding that suppression is not a necessary sanction where the statute has been breached, but dissented from the finding that the statute was breached in this case. There are considerations relevant both to blood samples generally as well as to the blood samples in this case specifically that mandate the conclusion that the preservation of the samples was not "necessary for the purpose of being produced or used as evidence on any trial," as provided in § 5. The order of the circuit court should be affirmed without modification.

1. SEARCHES AND SEIZURES — INTOXICATING LIQUORS — SEARCH WARRANTS — REFUSAL OF BREATHALYZER TEST.

The search warrant procedures provided in MCL 780.655; MSA 28.1259(5), not the procedures provided in the implied consent statute, MCL 257.625a; MSA 9.2325(1), apply to a blood sample obtained pursuant to a search warrant from a person arrested for allegedly operating a motor vehicle while under the influence of intoxicating liquor who refused to submit to a Breathalyzer test (MCL 257.625; MSA 9.2325).

2. SEARCHES AND SEIZURES — EVIDENCE — CRIMINAL LAW — LOSS OF EVIDENCE — ADVERSE INFERENCE INSTRUCTION.

A violation of MCL 780.655; MSA 28.1259(5) that results in the loss of relevant evidence in a criminal proceeding may warrant instructing the factfinder that it may infer that the evidence unpreserved because of the violation of the statute would have favored the defendant; to warrant an adverse inference instruction, the defendant must articulate how the loss prejudiced the defendant's case by explaining how the lost evidence might be expected to play a significant role in the defendant's defense.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *Joyce F. Todd*, Assistant Prosecuting Attorney, for the people.

*Traver, Lepley and Walzak* (by *Daniel A. Traver*), for the defendant.

Before: MARKMAN, P.J., and MCDONALD and CAVANAGH, JJ.

MCDONALD, J. Defendant is charged with operating a vehicle while under the influence of intoxicating liquor, MCL 257.625; MSA 9.2325. Defendant appeals by leave granted a circuit court order reversing a district court order suppressing blood test results revealing that defendant's blood alcohol content was 0.18 percent. We affirm the circuit court's reversal of the district court's order suppressing the blood test results, but hold defendant is entitled to an adverse inference instruction because of the violation of the search warrant statute that occurred in this case.

On March 11, 1995, defendant was arrested and taken to the police station. The police advised defendant of his chemical test rights pursuant to subsection 6(b) of the implied consent statute, MCL 257.625a(6)(b); MSA 9.2325(1)(6)(b), but defendant refused to submit to a Breathalyzer test. After obtaining a search warrant, the police transported defendant to the hospital to obtain a blood sample, which was mailed to the Michigan State Police laboratory for testing. The toxicology report was completed March 15, 1995, and indicated defendant had a blood alcohol content of 0.18 percent. The blood sample was later destroyed pursuant to departmental procedure on May 16, 1995. On July 3, 1995, the prosecution provided defendant with a copy of the blood test results.

Defendant moved to suppress the blood test results in the district court, arguing the police violated the relevant search warrant statute, MCL 780.655; MSA 28.1259(5) (hereafter § 5), by failing to preserve the

blood sample for trial.[1] The prosecution claimed
defendant had notice the blood sample would be
destroyed because of discovery that took place at the
pretrial conference on May 3, 1995. Although not
entirely clear from the record, it appears the prosecu-
tion claimed defendant saw the lab report, which indi-
cated the department policy to destroy samples
within thirty days. However, both parties appear to
agree that defendant was not provided with his own
copy of the test results until July 3, 1995. The prose-
cution argued that despite notice the blood sample
would be destroyed, defendant did not take any
action. Defendant countered that the statute did not
require him to take any action. Defendant also
claimed he had requested the sample be saved when
he requested in a letter dated April 11, 1995, an
opportunity to inspect any tangible evidence the pros-
ecution intended to introduce at trial. The prosecu-
tion also argued evidence had not been destroyed
because it was the test results that would be used as
evidence at trial, not the blood sample. Defendant
responded that the search warrant statute does not
specify that the evidence to be saved for trial must be
evidence the prosecution, rather than the defendant,
intends to use at trial. Finally, the prosecution argued
defendant should not be in a better position because
his refusal to consent required the police to get a
search warrant to obtain a blood sample. Defendant
argued he was in a different position because of the
differences in the statutes and that there were conse-

---

[1] Defendant also argued the statute was violated because the police did
not provide him with a copy of the tabulation. The district court ulti-
mately rejected this argument, and it is not relevant to this appeal.

quences for refusing to consent under the implied consent statute. The district court granted defendant's motion to suppress, remarking that the case should not be treated differently than if it were a case involving a large quantity of heroin that was destroyed. The district court also reasoned that the blood sample was direct evidence relevant to the issue of defendant's blood alcohol content.

The prosecution appealed to the circuit court by leave granted, again arguing that the implied consent statute did not require the blood sample to be preserved because the test results, not the blood sample, was the evidence. The prosecution also argued defendant's due process rights were not violated by the destruction of the blood sample, relying on *California v Trombetta*, 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984). The circuit court accepted the prosecution's argument and found the district court erred in suppressing the test results.

On appeal, defendant argues the blood test results should be suppressed at trial because the police violated § 5. Statutory interpretation is a question of law that this Court reviews de novo. *People v Denio*, 454 Mich 691, 698; 564 NW2d 13 (1997).

Section 5 provides:

> When an officer in the execution of a search warrant finds any property or seizes any of the other things for which a search warrant is allowed by this act, the officer, in the presence of the person from whose possession or premises the property or thing was taken, if present, or in the presence of at least 1 other person, shall make a complete and accurate tabulation of the property and things so seized. The officer taking property or other things under the warrant shall forthwith give to the person from whom or

from whose premises the property was taken a copy of the
warrant and shall give to the person a copy of the tabula-
tion upon completion, or shall leave a copy of the warrant
and tabulation at the place from which the property or
thing was taken. He shall file the tabulation promptly with
the court or magistrate. The tabulation may be suppressed
by order of the court until the final disposition of the case
unless otherwise ordered. *The property and things so
seized shall be safely kept by the officer so long as neces-
sary for the purpose of being produced or used as evidence
on any trial.* As soon as practicable after trial, stolen or
embezzled property shall be restored to the owner thereof.
Other things seized under the warrant shall be disposed of
under direction of the court or magistrate, except that mon-
eys and other useful property shall be turned over to the
state, county or municipality, the officers of which seized
the property under the warrant. Such moneys shall be
credited to the general fund of the state, county or munici-
pality. [MCL 780.655; MSA 28.1259(5) (emphasis added.)]

The thing seized in this case was defendant's blood,
which was destroyed on May 16, 1995. Defendant
does not allege any bad faith on the part of the police
and does not dispute that the blood was destroyed
pursuant to routine departmental procedure. How-
ever, because the blood was destroyed, it was not
safely kept for the purpose of being produced or used
as evidence at trial. Accordingly, we find the statute
was violated in this case.

The issue is whether suppression of the test results
is the appropriate remedy for this violation of § 5.
The statute itself does not provide a remedy for its
violation. The parties have not cited, and our research
has not revealed, a case where the police violated § 5

by failing to preserve seized items for trial in the context of a criminal case.[2]

In *People v Stoney*, 157 Mich App 721; 403 NW2d 212 (1987), this Court addressed the issue whether test results should be suppressed in the context of the implied consent statute, MCL 257.625a; MSA 9.2325(1). In *Stoney*, the defendant's blood was drawn and tested by hospital personnel. The hospital later discarded the blood sample and forwarded the test results, which revealed the defendant's blood alcohol content was 0.21 percent, to the prosecutor pursuant to subsection 9 of the implied consent statute. This Court held the trial court erred in suppressing the test results because the plain language of subsection 1 of the implied consent statute provides it is the test results, not the blood sample itself, which are admissible at trial. *Stoney, supra* at 725. Moreover, this Court reasoned that while the statute provides the results of the test must, upon request, be made available to the defendant or the defendant's attorney, it does not require preservation of the sample itself. *Id.* Accordingly, this Court held the test results were admissible under the implied consent statute and the destruction of the sample was "irrelevant." *Id.*

---

[2] This Court has addressed violations of other portions of § 5. See *People v Lucas*, 188 Mich App 554, 573; 470 NW2d 460 (1991) (holding the failure to leave copies of the search warrant and tabulation with the defendant was a "hypertechnical" violation of § 5 and did not require suppression of the seized evidence); *People v Myers*, 163 Mich App 120; 413 NW2d 749 (1987) (holding suppression not required where the police committed a "hypertechnical" violation of § 5 by failing to give the defendant a copy of the search warrant); *People v Tennon*, 70 Mich App 447; 245 NW2d 756 (1976) (holding the failure to make the tabulation in the presence of the defendant, a "ministerial duty," did not amount to error requiring reversal.)

However, this case is not governed by the implied consent statute because the police obtained the blood sample through a search warrant. This Court has repeatedly held that when authorities obtain a search warrant to take a blood sample, the issue of consent is removed, and the implied consent statute is not applicable. *Manko v Root*, 190 Mich App 702, 704; 476 NW2d 776 (1991); *People v Snyder*, 181 Mich App 768, 770; 449 NW2d 703 (1989); *People v Hempstead*, 144 Mich App 348, 353; 375 NW2d 445 (1985); *People v Cords*, 75 Mich App 415, 421; 254 NW2d 911 (1977). In other words, the search warrant procedure exists independently of the testing procedure set forth in the implied consent statute. *Manko, supra* at 704; *Snyder, supra* at 770. Although we recognize that the implied consent statute refers to chemical tests performed pursuant to a court order in subsection 6(b)(iv), this portion of the statute simply states that the allegedly intoxicated driver must be advised that if the driver refuses the officer's request to take the test, the test may be taken pursuant to a court order. See *Snyder, supra* at 771. The implied consent statute does not provide that tests performed pursuant to a court order fall within its purview. We refuse to read this into the statute as written by the Legislature. Accordingly, we must look to § 5 to determine the appropriate remedy in this case.[3]

The parties have not cited, and our research has not revealed, a case where the police violated § 5 by failing to preserve seized items for trial in the context

---

[3] We also note it is clear the officers were proceeding pursuant to the search warrant statute because they complied with other requirements set forth in § 5 such as filing the tabulation, i.e., the return, and providing defendant a copy of the search warrant.

of a criminal case. However, our research has revealed that this Court has addressed a violation of § 5 in the context of a civil forfeiture proceeding in *In re Forfeiture of $25,505*, 220 Mich App 572; 560 NW2d 341 (1996).[4] There, the officers seized cash found in the ceiling of the claimant's basement that allegedly was the proceeds of his son's drug trafficking. The officers did not sequester the cash to preserve it for trial, but instead merely deposited it in a bank account. This Court assumed § 5 was violated because the prosecution did not dispute there was a violation. The claimant argued he was prejudiced by this violation because he could not test the cash for fingerprints to prove that it was his, not his son's.[5] *Id.* at 577. After examining previous decisions regarding violations of other portions of § 5, see note 2, *supra*, this Court recognized that "even in the context of criminal proceedings, suppression of the evidence is not a necessary remedy for a violation of § 5." *In re Forfeiture, supra* at 578. This Court explained that the language of § 5 suggested "the principal focus of the statute is to ensure police integrity rather than to create a personal legal right in the claimant. The preservation of evidence for the benefit of a party from whom property is seized is a clear benefit of § 5 but only an incidental one." *Id.* at 579. This Court concluded that summarily returning seized property to a claimant was not an appropriate remedy for a viola-

---

[4] The trial court did not have the benefit of this decision at the time of its ruling. However, it was released well before the parties filed their briefs on appeal and neither party cited this decision.

[5] The claimant also contended the officers violated § 5 because they did not count the cash in his presence, which prejudiced his ability to prove his claim the officers seized more than $25,505 in cash.

tion of § 5. Instead, this Court held that "an effective remedy for a violation of § 5 is normally to instruct the factfinder that it may infer that evidence unpreserved because of violations of the statute would have favored the claimant." *Id.* at 579-580. We believe giving an adverse inference instruction is also appropriate in the context of criminal proceedings. As explained in *In re Forfeiture, supra* at 580:

> [A] violation of § 5 resulting in the loss of relevant evidence raises a rebuttable presumption that the unpreserved evidence would have been adverse to the police. The police thus act at their peril when they fail to observe the requirements of § 5.

In this case, the violation of § 5 did result in the loss of relevant evidence. We agree with the district court that the blood sample was directly relevant to the issue of defendant's blood alcohol content. We recognize the fact that the blood sample was not meaningful without test results, but we do not believe this fact negates the blood sample's relevance.

We also believe that to warrant an adverse inference instruction, a defendant must articulate how the violation of § 5 prejudiced the defendant. In *In re Forfeiture, supra* at 578-579, this Court emphasized that the claimant had alleged prejudice from the violations of § 5, namely, that he could not test the lost cash for fingerprints, which prejudiced his ability to prove his claim that the money did not belong to his son. Moreover, in *People v Lucas*, 188 Mich App 554, 573; 470 NW2d 460 (1991), where the police failed to leave copies of the search warrant and tabulation with the defendant, this Court held that the "hypertechnical" violation of § 5 did not require sup-

pression of the seized evidence, "particularly where defendant cannot articulate any harm or prejudice that resulted." We do not characterize the violation in this case as hypertechnical, however we conclude defendant must articulate how he was prejudiced in this case. In other words, defendant must explain how the lost evidence might be expected to play a significant role in his defense. Although we are disturbed at the conclusory nature of defendant's appellant brief, which fails to allege prejudice, defendant argued below the loss of the blood sample prevented him from conducting an independent analysis of the sample. Accordingly, the articulation requirement is met in this case. For these reasons, an adverse inference instruction to the jury is appropriate at trial in this case.

Finally, we note the prosecution has argued defendant's due process rights were not violated in this case, primarily relying on *Trombetta, supra.* Defendant relies on the search warrant statute, not the constitution, in arguing the police should have preserved the blood sample. Our holding is confined to interpreting the search warrant statute, and whether there was a violation of defendant's due process rights is not relevant to this determination.

Affirmed as modified and remanded for trial. We do not retain jurisdiction.

CAVANAGH, J., concurred.

MARKMAN, P.J. (*concurring in part and dissenting in part*). Although I generally subscribe to the interpretation of MCL 780.655; MSA 28.1259(5) (hereafter § 5), accorded by the majority, and specifically agree that suppression is not a necessary sanction where

the statute has been breached, I respectfully dissent
from its determination that the statute has been
breached in the instant case. I would therefore affirm
the circuit court order reversing the district court
order suppressing the blood alcohol test results.

The operative language of § 5 provides that "[t]he
property and things so seized shall be safely kept by
the officer so long as necessary for the purpose of
being produced or used as evidence on any trial." In
my judgment, there are considerations relevant both
to blood samples generally as well as to the blood
samples in this case specifically, that lead me to the
conclusion that the preservation of such samples was
not "necessary for the purpose of being produced or
used as evidence on any trial." By finding to the con-
trary, I believe that the majority would considerably
alter traditional police practices pertaining to the
preservation of blood samples.[1]

First, and most importantly, the chronology of this
case indicates that the defendant had a reasonable
period within which to request further testing of the
blood samples before their destruction. The test
results were available by March 15, 1995, and the
samples were not destroyed until May 16, 1995. At
least two weeks before the destruction of the sam-
ples, the defendant appears to have been presented
both the results of their testing and their destruction
schedule. Despite this, he did not request further test-
ing or preservation of the samples until after they had
been destroyed. I agree with the majority that a

---

[1] Indeed, I am also concerned about the implications of this decision
for the police department's obligations to retain evidence in other con-
texts where it is not currently common practice, such as the preservation
of large amounts of drugs seized pursuant to a search warrant.

defendant is under no affirmative obligation to object to the destruction of evidence under § 5, and I further believe that a defendant's mere awareness of an otherwise unreasonable destruction schedule does not suffice to excuse police noncompliance with § 5. However, in my judgment, the destruction schedule in this case was reasonable, altogether routine and well-established, administered in good faith, and communicated to the defendant in a manner sufficient to enable his timely and convenient objection. Thus, the defendant's failure to object to the destruction of the sample gives rise, I believe, to a strong inference concerning its lack of exculpatory potential. Indeed, I cannot think of a clearer statement by a defendant himself that a sample is not "necessary" for use at trial than the fact of his nonobjection to its destruction.[2] Is it possible to conceive that a defendant who truly believed that the preservation of evidence could lead to his exoneration would fail to ensure such preservation? Is it possible that such a defendant would tolerate the destruction of evidence "necessary" at his trial in exchange for the adverse inference

---

[2] This is especially true in view of the fact that the defendant did not have the benefit of the instant decision when he chose to allow destruction of the samples. While, as a result of this decision, *future* defendants may be able more credibly to argue that their acquiescence in the destruction of blood samples should not generate an inference that the samples were viewed as unnecessary at trial, here the majority concedes that "[t]he parties have not cited, and our research has not revealed, a case where the police violated § 5 by failing to preserve seized items for trial in the context of a criminal case." *Ante* at 351, 353. Given this legal uncertainty confronting defendant at the time he made his decision to allow the destruction of evidence to proceed, it can hardly be surmised that he considered such evidence to be "necessary" in any way for his defense. That this decision itself was an altogether reasonable one, see the discussion that follows.

instruction prescribed by the majority?[3] Where a defendant has effectively acquiesced in the destruction of evidence, I do not believe that an inference adverse to the prosecutor ought to arise from such destruction.

Second, underscoring the inference—drawn from a defendant's nonobjection to the destruction of evidence after having been apprised of its imminent destruction—that such evidence is not potentially exculpatory is the simple fact that blood samples themselves are rarely "produced or used as evidence" at trial. Rather, what typically constitutes evidence are the test results relating to samples. For example, in Michigan's implied consent statute, MCL 257.625a(8); MSA 9.2325(1)(8), relating to trials for operating a motor vehicle while under the influence of intoxicating liquor (OUIL), it is the "test results" themselves that are the evidence that must be preserved for trial, not the blood, breath, or urine samples that are the basis of the testing.[4] See also *People v Stoney*, 157 Mich App 721, 725; 403 NW2d 212 (1987); *People v Tebo*, 133 Mich App 307, 309-310; 349 NW2d 172 (1984); *People v Stark*, 73 Mich App 332, 337-338; 251 NW2d 574 (1977); *California v Trombetta*, 467 US 479, 487-488; 104 S Ct 2528; 81 L

---

[3] While I agree with the majority that such an adverse inference instruction may generally be appropriate where there is destruction of evidence under § 5, including under some circumstances the destruction of blood samples, such an instruction does not seem appropriate where defendant's own conduct has demonstrated the inaccuracy and impropriety of such an inference.

[4] Although I recognize that the implied consent law is not dispositive with respect to blood samples drawn pursuant to a search warrant, it does nevertheless offer insight regarding what the Legislature considered to be relevant "evidence" in connection with the investigation and trial of OUIL criminal charges.

Ed 2d 413 (1984). The blood samples are rarely produced, and therefore rarely "necessary," at trial. In focusing upon things seized "for the purpose of being produced or used as *evidence*," we must take into consideration that it is the test results, rather than the samples, that ordinarily constitute the "evidence" in a drunk driving trial.

Third, in light of the high level of accuracy and integrity of blood alcohol tests, it is extraordinarily unlikely that additional testing on the unpreserved blood samples in this case would have produced results contrary to those of the police laboratory and, therefore, have been exculpatory for the defendant. See *id.* at 489-490 (observing that, in light of the accuracy of Breathalyzer tests, the chances were "extremely low" that unpreserved breath samples would have been exculpatory). Unlike areas of analysis in which experts might reasonably disagree about the meaning or significance of evidence, blood alcohol tests are scientifically routine and impose virtually no interpretative burden upon those assessing the results, making it highly improbable that the defendant's access to the sample itself would have made a difference at trial. Indeed, the very fact that the destruction of blood samples is a routine procedure among most police departments illustrates the virtual absence of controversy regarding the accuracy of the scientific testing of blood alcohol content. Thus, in comparison to other forms of unpreserved evidence, the burden of demonstrating prejudice relative to an

unpreserved blood sample will normally be a much greater one.[5]

Fourth, even absent unpreserved blood samples, a defendant still possesses a reasonable means of impeaching the alcohol content test results where there is actual concern about the accuracy of the results. At trial, he retains the opportunity to raise questions regarding the accuracy and procedures of the particular test results at issue (e.g., equipment condition, margins of error, compliance with testing norms and practices, and human error) without resort to the blood sample itself.[6] 6 See *Stoney, supra* at 727; *Trombetta, supra* at 491.

Finally, with respect to the majority's analysis, I note that no evidence has been offered here by either party concerning the extent to which blood samples deteriorate or degrade over time and, at some point, cannot effectively be tested for alcohol content. Even under the majority's analysis, I do not believe that § 5—requiring the retention of evidence "so long as

---

[5] Indeed, defendant himself has not claimed that he was harmed or prejudiced in any specific way by police procedures in this case. He does not specifically claim that access to the blood sample would have allowed him to offer exculpatory evidence, explain or mitigate the original test results, or in any other way provide himself with a stronger defense.

[6] See also *Arizona v Youngblood*, 488 US 51, 56; 109 S Ct 333; 102 L Ed 2d 281 (1988), in which the United States Supreme Court, in the context of unpreserved breath samples, refused to suppress Breathalyzer test results and remarked:

[F]irst, "the officers here were acting in 'good faith and in accord with their normal practice' "; second, in the light of the procedures actually used the chances that preserved samples would have exculpated the defendants were slim; and third, even if the samples might have shown inaccuracy in the tests, the defendants had "alternative means of demonstrating their innocence." [Citations omitted.]

necessary for the purpose of being produced or used as evidence on any trial"—requires the preservation of samples beyond their effective testing life. Additionally, even under the majority's analysis, I do not believe that an adverse inference instruction need be given where either the trial court itself has approved the destruction of evidence or the testing procedure itself has necessarily resulted in its destruction.

I respectfully dissent and would affirm the order of the circuit court.