PEOPLE v JAGOTKA

Docket No. 113735. Decided October 26, 1999. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed in part, reversed in part, and remanded the case to the district court for further proceedings.

Michael J. Jagotka was charged with driving under the influence of intoxicants. The 52-1 District Court, Brian W. MacKenzie, J., suppressed the results of Mr. Jagotka's blood-alcohol test after it was revealed that the sample on which the results were based had been destroyed. The circuit court, Jessica R. Cooper, J., reversed the suppression order. The Court of Appeals, MCDONALD and CAVANAGH, JJ. (MARKMAN, P.J., concurring in part and dissenting in part), affirmed, but held that the destruction of the blood sample constituted a violation of MCL 780.655; MSA 28.1259(5), and directed that the defendant receive an adverse inference jury instruction. 232 Mich App 346 (1998) (Docket No. 197753). The people seek leave to appeal.

The Supreme Court affirmed in part, reversed in part, and remanded the case to the district court for further proceedings.

Justices TAYLOR, CORRIGAN, and YOUNG, JJ., concurring, stated that there was neither a violation of MCL 780.655; MSA 28.1259(5) nor of the federal or state constitution. Thus, there is no need to consider a proper remedy or to reach the issue whether an "adverse-inference" instruction would be an appropriate remedy or, if so, what the content of such an instruction might be.

Chief Justice WEAVER concurred in the result only.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the phrase "shall be safely kept" in MCL 780.655; MSA 28.1259(5) is not ambiguous. It requires the police to keep blood samples until trial. Disposal of a blood sample violates this language. Test reports are in no way "property and things so seized." The only thing seized in this case was the blood itself. State police could keep, destroy, misplace, or ceremonially burn a test report, and whatever effect that might have on what is admitted at trial, it would in no way be governed by the statute. The statute only governs what was "seized."

Additionally, MCL 780.655; MSA 28.1259(5) does not restrict the police to safely keep the evidence only as long as necessary for production or use by the prosecution. It requires the evidence to be safely kept as long as necessary for production or use at trial, and that includes production or use by the defendant. Because the statute does not require safekeeping only until "produced or used" by the prosecution, the blood sample should have been safely kept.

The contention that the defendant failed to request the sample within a reasonable time, within the statute's language, is immaterial. Nothing in the statute conditions anything on the defendant's assertion of any right, or seems to permit the sort of policy of destruction apparent in this case.

Justice MARKMAN took no part in the decision of this case.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Joyce F. Todd*, Assistant Prosecuting Attorney, for the people.

*Traver, Lepley & Walzak* (by *Daniel A. Traver*) for the defendant-appellee.

PER CURIAM. We reverse in part the judgment of the Court of Appeals and affirm the judgment of the circuit court. We remand this case to the district court for further proceedings. MCR 7.302(F)(1).

TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

WEAVER, C.J., concurred in the result only.

TAYLOR, CORRIGAN, and YOUNG, JJ. (*concurring*). The defendant persuaded the district court to suppress the result of a blood test that was taken to determine whether he had been driving while intoxicated. The circuit court reversed the suppression order. The Court of Appeals affirmed the circuit court, except that it directed that the defendant receive the benefit of a special jury instruction. We reverse in part the

judgment of the Court of Appeals and affirm the judgment of the circuit court.

I

Defendant Michael J. Jagotka was arrested in March 1995 by an officer who suspected that he had been driving while intoxicated. After obtaining a search warrant, the police took the defendant to Pontiac Osteopathic Hospital, where a blood sample was drawn.

The blood was analyzed at a Michigan State Police laboratory. On the basis of the test result and other evidence, the defendant was charged with driving under the influence of intoxicants.[1]

We are told that the test result came on a form that stated that blood samples normally are destroyed by the lab after approximately a month, unless the lab is notified that the sample should be retained.

A pretrial conference took place in early May 1995. On that date, says the prosecutor, defense counsel received a copy of the police report, which "contained information pertaining to the search warrant and the blood test."

The blood sample was evidently destroyed in mid-May 1995. There appears to be no dispute that this occurred pursuant to the ordinary practice of the State Police laboratory.

The prosecutor says that the result of the blood test was provided to defense counsel "[b]y" July 3,

---

[1] The charging documents have not been forwarded to us, so we are not certain of the exact charge.

1995. The Court of Appeals treated July 3 as the disclosure date.

The defendant filed in district court an August 1995 motion to suppress the results of the blood-alcohol test. The motion was granted. The district court did not explain with perfect clarity its rationale, but it appears that the court thought it unfair to allow the prosecution to go forward after the destruction of evidence that formed part of the basis for the charge.

The case was not tried at that point. Instead, the prosecutor appealed to the circuit court, which analyzed this case on the basis of the constitutional right to due process, focusing on the United States Supreme Court's decision in *California v Trombetta*, 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984). Finding no such constitutional violation, the circuit court reversed the suppression order.

The defendant appealed to the Court of Appeals.[2] In a divided opinion, a majority of the panel affirmed the judgment of the circuit court, which had reversed the district court suppression order. 232 Mich App 346; 591 NW2d 303 (1998). However, the majority also held that the destruction of the blood sample constituted a violation of MCL 780.655; MSA 28.1259(5).[3] On that basis, the Court of Appeals

---

[2] The appeal was by application for leave to appeal, which the Court granted. Unpublished order entered February 14, 1997 (Docket No. 197753).

[3] The statute provides:

When an officer in the execution of a search warrant finds any property or seizes any of the other things for which a search warrant is allowed by this act, the officer, in the presence of the person from whose possession or premises the property or thing was taken, if present, or in the presence of at least 1 other person, shall make a complete and accurate tabulation of the property and things so seized. The officer taking property or other things under

directed that, when this case is tried, the jury should be given "an adverse inference instruction." 232 Mich App 354-356. The exact content of such an instruction is not set forth in the majority opinion, but apparently the jury is to be told that the destroyed evidence—the blood sample—would have favored the defendant.

Justice MARKMAN concurred in part and dissented in part. He agreed that the evidence should not be suppressed. However, he disagreed that there had been any violation of the statute. He wrote that the blood sample itself (as opposed to the test result) would not have been evidence at the trial, and he offered several reasons why it does not make sense to require preservation of the blood. Believing that there was no violation of the statute, Justice MARKMAN saw no need for a special instruction.

The prosecuting attorney has applied for leave to appeal to this Court.

---

the warrant shall forthwith give to the person from whom or from whose premises the property was taken a copy of the warrant and shall give to the person a copy of the tabulation upon completion, or shall leave a copy of the warrant and tabulation at the place from which the property or thing was taken. He shall file the tabulation promptly with the court or magistrate. The tabulation may be suppressed by order of the court until the final disposition of the case unless otherwise ordered. *The property and things so seized shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence on any trial.* As soon as practicable after trial, stolen or embezzled property shall be restored to the owner thereof. Other things seized under the warrant shall be disposed of under direction of the court or magistrate, except that moneys and other useful property shall be turned over to the state, county or municipality, the officers of which seized the property under the warrant. Such moneys shall be credited to the general fund of the state, county or municipality. [Emphasis supplied.]

II

We agree with Justice MARKMAN that there was no violation of MCL 780.655; MSA 28.1259(5) in the present case.[4]

The statute provides, "The property and things so seized shall be safely kept by the officer so long as necessary for the purpose of being produced or used as evidence on any trial." In this instance, the defendant's blood was the material seized. However, as Justice MARKMAN correctly observed, blood samples themselves are not "produced or used as evidence" at trial. 232 Mich App 359-360. Accordingly, the statute's requirement that property seized be safely kept for use at trial was not triggered by the blood sample. As is clear, it is, rather, test results that are commonly brought before the jury.[5] Test results are not, however, "property . . . seized"; thus, the statute's safekeeping provision was not implicated by the test results either. When one engages in this logical analysis, the flaw in the dissent's argument becomes clear: namely, neither the blood sample nor the test results fall within the statute's safekeeping provision. More-

---

[4] Because the parties have neither raised nor briefed the issue, we will assume that MCL 780.655; MSA 28.1259(5) confers personal rights on a defendant. We thus leave resolution of this underlying question for an appropriate case.

[5] In this regard, see People v Stoney, 157 Mich App 721, 725; 403 NW2d 212 (1987), in which the Court of Appeals explained that, in a prosecution of this sort, the test result rather than the blood sample itself is the evidence that is to be introduced at trial. Stoney addressed whether test results should be suppressed in the context of the implied consent statute, see MCL 257.625a; MSA 9.2325(1). Although the Court of Appeals majority correctly observed that "this case is not governed by the implied consent statute because the police obtained the blood sample through a search warrant," 232 Mich App 353, Stoney is nevertheless instructive regarding the admission of blood-alcohol evidence at trial.

over, · the dissent's suggestion that this rationale allows a "broad policy of destruction" is unfounded. Slip op at 2. By noting that blood samples themselves are not introduced as evidence, we do not suggest that other types of seized items, which might be introduced at trial, could be rendered "unnecessary" by the mere generation of a "report." Accordingly, in this situation, the police did not violate the statute under its plain terms.

We are also satisfied that the defendant has not been denied due process of law. As Justice MARKMAN noted, the defendant had a reasonable period of time within which to request further testing of the blood sample before its destruction. "[T]he destruction schedule in this case was reasonable, altogether routine and well-established, administered in good faith, and communicated to defendant in a manner sufficient to enable his timely and convenient objection." 232 Mich App 358. Nonetheless, the defendant failed to object to the destruction of the sample or to request further testing before the sample was destroyed. Moreover, Justice MARKMAN also noted that the defendant had the ability, even after the blood sample was destroyed, to impeach the test result by raising questions about "equipment condition, margins of error, compliance with testing norms and practices, and human error." 232 Mich App 360-361. Where the police have acted in good faith[6] pursuant to a reasonable policy and have not acted to destroy exculpatory evidence, there is no denial of due process. *Trombetta, supra.*

---

[6] There is no suggestion in this case that the defendant was singled out for special treatment.

For these reasons, this case presents neither a violation of MCL 780.655; MSA 28.1259(5) nor the federal or state constitution.[7] There being no violation, there is no need to consider a proper remedy for a violation. We thus do not reach the issue whether an "adverse-inference" instruction would be the proper remedy or, if so, what the content of such an instruction might be.[8]

Accordingly, we reverse in part the judgment of the Court of Appeals and affirm the judgment of the circuit court. We remand this case to the district court for further proceedings. MCR 7.302(F)(1).

TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

CAVANAGH, J. (*dissenting*). I cannot join this Court's opinion. The vast majority of the opinion, and the partial dissent from the Court of Appeals upon which it is based, deal with why a statute that requires the police to keep blood samples until trial would be a bad idea. Whatever the merits of such contentions, they do very little to address the relevant statutory language itself, particularly the sentence:

> The property and things so seized shall be safely kept by the officer so long as necessary for the purpose of being

---

[7] Contrary to the dissent's suggestion, we do not conclude that the police may destroy a blood sample "as soon as the police generate their test report." We hold only (1) that MCL 780.655; MSA 28.1259(5) does not mandate safekeeping of blood samples and (2) that due process was not violated under the specific circumstances of this case.

[8] We therefore do not explore the determination in *In re Forfeiture of $25,505*, 220 Mich App 572, 579-580; 560 NW2d 341 (1996), that an adverse-inference instruction is an appropriate remedy for a violation of the statute. We do, however, adhere to our statements in *Fields* regarding the necessity of a logical connection between the circumstances of a case and a proposed instruction concerning an adverse inference.

produced or used as evidence in any trial. [MCL 780.655; MSA 28.1259(5).]

For starters, the phrase "shall be safely kept" is not ambiguous. Next, the majority's contention that it is the test report and not the blood sample itself that will be used at trial, and thus that disposal of the blood sample does not violate this language, is not persuasive. Test reports are in no way "property and things so seized." The only thing seized in this incident was the blood itself. The majority's rationale that it is the test reports, not the blood itself, that will be produced at trial allows a broad policy of destruction.[1] State police could keep, destroy, misplace, or ceremonially burn the test report, and whatever effect that might have on what was admitted at defendant's trial, it would in no way be governed by this statute. This statute only governs what was "seized."

Additionally, MCL 780.655; MSA 28.1259(5) does not restrict the police to safely keep the evidence only as long as necessary for production or use by the prosecution. It is true, as the majority observes, that the defendant had means other than introducing his own test report or the blood itself to impeach the

---

[1] Under this analysis, anytime the police want to destroy evidence, they merely need to generate a report that will be introduced at trial, and the underlying evidence itself can be destroyed.

Moreover, the majority's reliance on *People v Stoney*, 157 Mich App 721; 403 NW2d 212 (1987), is not persuasive. *Stoney* was decided under MCL 257.625a; MSA 9.2325(1), the implied consent statute, which specifically allows the introduction of test results. The majority finds *Stoney* instructive, and indeed it is, about the implied consent statute's provision that test reports can be introduced at trial. As the Court of Appeals majority noted, however, the existence and admissibility of the test report does not render the blood itself irrelevant. 232 Mich App 355. The provisions of MCL 257.625a; MSA 9.2325(1) do not abridge the requirement of MCL 780.655; MSA 28.1259(5) that property seized must be safely kept.

prosecution's test report. Nonetheless, the statutory language does not restrict defendant to these means. It requires the evidence to be safely kept as long as necessary for production or use at trial, and that includes production or use by the defendant. The majority emphasizes that it is the test reports that are usually introduced at trial, but under its reasoning, the defendant could be foreclosed from ever introducing his own test report, let alone the blood sample itself, because as soon as the police generate their test report, they can destroy the blood sample.[2] Because the statute does not require safekeeping only until "produced or used" by the prosecution, the blood sample should have been safely kept.[3]

Likewise, the majority's contention that the defendant failed to request the sample within a reasonable time, again, within the statute's language, is immaterial. Nothing in this statute conditions anything on the defendant's assertion of any right, or seems to permit the sort of policy of destruction apparent in this case.

This Court should strive to be true to its duty to interpret statutes. It should not fall astray simply because a particular statute leads to a result that

---

[2] The majority states that it holds only "that MCL 780.655; MSA 28.1259(5) does not mandate safekeeping of blood samples . . . ." Perhaps the majority is confused by the present police policy of keeping blood samples for thirty days; but the holding that the majority admits does allow destruction as soon as a report for police use is generated. If blood samples need not be safely kept, then as soon as the police generate a test report, they in fact can destroy the blood sample, because the majority does not require them to safely keep the blood sample.

[3] Any suggestion that defendant did not claim specific prejudice in this case, so the safekeeping requirement does not apply, is incorrect. As defendant rightly noted below, the statute does not require him to take any action. It requires police to safely keep evidence to be produced or used at trial, without specifying who will produce or use the evidence.

might either displease or require changes in the state police lab's practices.

KELLY, J., concurred with CAVANAGH, J.

MARKMAN, J., took no part in the decision of this case.