*In re* FORFEITURE OF 5118 INDIAN GARDEN ROAD

Docket No. 225213. Submitted March 6, 2002, at Grand Rapids. Decided October 1, 2002, at 9:05 A.M.

The Emmet County Prosecuting Attorney brought a civil forfeiture action in the Emmet Circuit Court, seeking the forfeiture of a home and other property owned by Frank S. McKenney. The action was brought after McKenney was convicted of possession with intent to deliver at least five, but less than forty-five, kilograms of marijuana. The court, Charles W. Johnson, J., granted summary disposition in favor of the prosecuting attorney, finding a substantial connection between the drugs and the home, that the forfeiture did not constitute an excessive fine in light of McKenney's culpability and the value of the drugs, and that a homestead exemption was inapplicable in this action. McKenney appealed.

The Court of Appeals *held*:

1. The prosecutor established a sufficient connection between the home and the underlying illegal transaction to warrant forfeiture of the home, which was used to store or distribute drugs on a regular basis.

2. The forfeiture of the home did not constitute an unconstitutionally excessive fine given the amount of drugs involved, the value of the drugs and the home, and the societal harm imposed by McKenney's actions.

3. The statute allowing the forfeiture in this case does not provide for a homestead exemption. The provisions of Const 1963, art 10, § 3 and MCL 600.6023 regarding homestead exemptions concern the property of a debtor and the debtor's dependents and do not apply where, as in this case, the forfeiture resulted from the use of the property to further a criminal enterprise and not as a result of financial misfortunes and debt.

Affirmed.

*Robert J. Engel*, Prosecuting Attorney, and *Maria I. Barton*, Assistant Prosecuting Attorney, for the plaintiff.

*Nieuwenhuis & Allen PLC* (by *Helen C. Nieuwenhuis*) for Frank S. McKenney.

Before: Meter, P.J, and Markey and Owens, JJ.

Meter, P.J. Claimant Frank McKenney, whose home was seized in relation to a drug crime, appeals as of right from an order granting summary disposition in favor of plaintiff Emmet County Prosecuting Attorney in this forfeiture case. We affirm.

After the police found approximately seventeen pounds of marijuana in McKenney's home, McKenney was convicted of possession with intent to deliver at least five, but less than forty-five, kilograms of marijuana, MCL 333.7401(2)(d)(ii). Plaintiff then filed a civil forfeiture action against certain of McKenney's property[1] under MCL 333.7521, which provides, inter alia, for the forfeiture of property used as a "container" for a controlled substance and for the forfeiture of "[a]ny thing of value" used to facilitate a drug offense. See MCL 333.7521(1)(c) and (f). Plaintiff moved for summary disposition under MCR 2.116(C)(10), and the trial court granted the motion, opining that a substantial connection existed between the drugs and the home, that the forfeiture did not constitute an excessive fine in light of McKenney's culpability and the value of the drugs, and that a homestead exemption was inapplicable.

We review do novo a trial court's decision with regard to a motion for summary disposition.[2] *Spiek v*

---

[1] Plaintiff seized both personal and real property from McKenney, but McKenney does not challenge the personal property seizure on appeal.

[2] To the extent this appeal involves a question of constitutional law, our review is similarly de novo. See *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000).

*Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition should be granted under this provision if, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson,* 212 Mich App 45, 48; 536 NW2d 834 (1995).

On appeal, McKenney initially suggests that the trial court erred in granting summary disposition to plaintiff because there was no substantial connection between the home and the drug activity in this case.[3] We disagree. Under MCL 333.7521(1)(f), real property may be forfeited where there is a " 'substantial connection' between the realty and the underlying illegal transaction." *In re Forfeiture of One 1978 Sterling Mobile Home,* 205 Mich App 427, 430; 517 NW2d 812 (1994), quoting *In re Forfeiture of $5,264,* 432 Mich 242, 262; 439 NW2d 246 (1989). The evidence in this case showed that McKenney had approximately seventeen pounds of marijuana located throughout the home. The police found records in McKenney's bedroom suggesting that approximately twenty-seven customers owed him approximately $20,000 for marijuana. An affiant stated that he purchased marijuana from McKenney over the course of several years and that the house in question was used for many of the transactions. Moreover, drug-packaging paraphernalia

---

[3] We note our rejection of the prosecutor's suggestion that McKenney's instant appeal is moot. Indeed, even though McKenney quitclaimed his interest in the subject property, he did so because he was bound by the trial court order of forfeiture during the pendency of this appeal, see MCR 7.209(A)(1), and an appellate remedy for error remains. See, generally, *In re Forfeiture of $256 & One 1978 Oldsmobile,* 445 Mich 279, 282; 517 NW2d 732 (1994).

was found in the home. Under these circumstances, plaintiff established a sufficient connection between the home and underlying illegal transaction to warrant forfeiture. Indeed, the evidence showed that the home was used to store or distribute narcotics on a regular basis. See *In re Forfeiture of $5,264, supra* at 262-264, and *In re Forfeiture of Mobile Home, supra* at 430-431.

McKenney next argues that the trial court erred in granting summary disposition to plaintiff because the forfeiture constituted an excessive fine under both the United States and Michigan Constitutions. We decline to address the federal constitutional issue because "the United States Supreme Court has never determined that the [federal] Excessive Fines Clause is applicable to the states through the Fourteenth Amendment [of the United States Constitution]." *In re Forfeiture of $25,505*, 220 Mich App 572, 583; 560 NW2d 341 (1996). An analysis under the state Excessive Fines Clause, however, is appropriate. *Id.* at 584. This clause states that "[e]xcessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16.

In *People v Antolovich*, 207 Mich App 714, 717; 525 NW2d 513 (1994), the Court, in addressing whether a fine violated the state Excessive Fines Clause, favorably cited the analysis in *People v Wolfe*, 338 Mich 525, 540; 61 NW2d 767 (1953), and listed the following factors for consideration:

"In determining whether a fine authorized by statute is excessive in the constitutional sense, due regard must be had to the object designed to be accomplished, to the

importance and magnitude of the public interest sought to be protected, to the circumstances and nature of the act for which it is imposed, to the preventive effect upon the commission of the particular kind of crime, and in some instances to the ability of [the] accused to pay, although the mere fact that in a particular case [the] accused is unable to pay the fine required to be assessed does not render the statute unconstitutional." [*Antolovich, supra* at 717, quoting 24 CJS, Criminal Law, § 1604, p 203.]

These factors dovetail, to a certain extent, with the United States Supreme Court's statement in *United States v Bajakajian*, 524 US 321, 337; 118 S Ct 2028; 141 L Ed 2d 314 (1998), that a punitive forfeiture is unconstitutional if "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense . . . ."

In considering the above factors from *Antolovich* and *Bajakajian*, we conclude that the forfeiture of a home associated with drug trafficking serves as a strong deterrence measure. "Moreover, public sentiment places great importance on confronting illegal drug trafficking . . . ." *Antolovich, supra* at 718. In addition, the nature of McKenney's illegal activity in the home in this case was severe, given the quantity of marijuana found. A witness testified that the street value of the drugs seized ranged from $30,000 to $65,000, depending on how the drugs were sold, and the records found in McKenney's bedroom demonstrated that he was owed an additional $20,000 from drug customers. The home was valued between $100,000 and $200,000, and McKenney's attorney valued the home at the low end of this scale. Given the amount of drugs involved, the value of the drugs and the home, and the societal harm imposed by McKenney's actions, we conclude that the forfeiture of the

home did not constitute an unconstitutionally excessive fine. Cf. *Bajakajian, supra* at 339-340.

Next, McKenney argues that the trial court should have exempted his home from forfeiture under Const 1963, art 10, § 3, and MCL 600.6023. Const 1963, art 10, § 3 states:

> A homestead in the amount of not less than $3,500 and personal property of every resident of this state in the amount of not less than $750, as defined by law, shall be exempt from forced sale on execution or other process of any court. Such exemptions shall not extend to any lien thereon excluded from exemption by law.

MCL 600.6023(1)(h) states:

> (1) The following property of the debtor and the debtor's dependents shall be exempt from levy and sale under any execution:

> *          *          *

> (h) A homestead of not exceeding 40 acres of land and the dwelling house and appurtenances on that homestead, and not included in any recorded plat, city, or village, or, instead, and at the option of the owner, a quantity of land not exceeding in amount 1 lot, being within a recorded town plat, city, or village, and the dwelling house and appurtenances on that land, owned and occupied by any resident of this state, not exceeding in value $3,500.00. This exemption extends to any person owning and occupying any house on land not his or her own and which the person claims as a homestead. However, this exemption does not apply to any mortgage on the homestead, lawfully obtained, except that the mortgage is not valid without the signature of a married judgment debtor's spouse unless either of the following occurs: . . . .

Despite these provisions, the statute allowing for the forfeiture in this case, MCL 333.7521, does not pro-

vide for a homestead exemption, and plaintiff therefore argues that a homestead exemption did not apply to the seizure of McKenney's property. We agree.

Indeed, Const 1963, art 10, § 3 provides that the extent of the homestead exemption shall be defined "by law . . . ." The Legislature set forth this definition in MCL 600.6023, a statute that deals with the "property of the *debtor* and the *debtor's* dependents" (emphasis added). Here, McKenney cannot be considered a "debtor" because his home was not seized to satisfy a debt or a money judgment. MCL 600.6023, which implements the constitutional provision, is thus inapplicable. We further conclude that the forfeiture here cannot be considered a "forced sale on execution or other process of any court" under Const 1963, art 10, § 3, because, once again, the forfeiture did not occur so the proceeds from the sale of the house could be used to satisfy a debt or money judgment.

In addition, we find an analogy between the instant case and the case of *McCarthy v Payne*, 141 Mich 571; 104 NW 981 (1905). In *McCarthy*, the Court discussed whether the plaintiff could claim a statutory business exemption after his property was seized to pay a debt. *Id.* at 572-574. The Court ruled that the plaintiff could not claim the exemption because he had been illegally operating a saloon without obtaining a license. *Id.* at 574. The Court favorably cited an out-of-state case indicating that business exemptions must be construed to apply only to *lawful* businesses. *Id.* Here, McKenney's home was used as an instrumentality to further illegal drug trafficking, and we thus conclude that it would be against public policy to apply the homestead exemption to the instant case, just as it was against public policy in

*McCarthy* to allow a business exemption for an unlawful business.

As noted in *Kleinert v Lefkowitz*, 271 Mich 79, 87; 259 NW 871 (1935), quoting *Riggs v Sterling*, 60 Mich 643, 649; 27 NW 705 (1886), the homestead exemption was designed to provide a secure place for a householder to " 'live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot avoid.' " Here, McKenney is losing his home not because of financial misfortunes but because he used the house to further his criminal enterprise. We conclude that the homestead exemption should not apply in such a circumstance.

Affirmed.